## WESTERN & ATLANTIC RAILROAD v. GEORGIA PUBLIC SERVICE COMMISSION ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 209.   Argued January 20, 1925.—Decided April 13, 1925.

1. A rule of a state public service commission that railroad switching service to which shippers are entitled by law or by rule of the commission, whether or not granted voluntarily by the railroad, shall not be discontinued without the consent of the commission after notice and hearing, is reasonable and within the police power of the State.   P. 496.

2. An order of a state commission requiring a railroad to continue to furnish switching service to a shipper on an established industrial siding does not deprive the railroad of property without due process, in violation of the Fourteenth Amendment, merely because the switching, separately considered, may not be profitable to the railroad, or may even involve a loss.   P. 496.

3. Under § 402 of the Transportation Act, 1920, the power to order establishment or abandonment of such side tracks, though employed largely for interstate commerce, is not with the Interstate Commerce Commission but with the States.   P. 497.

4. A bill to enjoin a state commission from enforcing an order requiring the plaintiff railroad to maintain service on an industrial switch track, will not lie upon the ground that the service creates undue discrimination between interstate shippers in cost of transportation, since this is a question which must be presented to the Interstate Commerce Commission.   P. 497.

Affirmed.

APPEAL from a decree of the District Court refusing a temporary injunction in a suit to restrain the appellee commission from enforcing an order requiring the appellant railroad to maintain service on an industrial side track.

Mr. *Fitzgerald Hall,* with whom Messrs. *H. C. Peeples, Frank Slemons,* and *William Waller* were on the brief for the appellant.

Mr. *W. E. Watkins,* for appellees.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The Western & Atlantic Railroad Company, an interstate common carrier, filed this bill in the District Court of the United States for the Northern District of Georgia against the Georgia Public Service Commission and its members, to enjoin the enforcement of an order of the Commission requiring the railroad to furnish switching service on an industrial siding to the National Bonded Warehouse, Inc., of Atlanta, Georgia.

In accordance with the limitations of § 266 of the Judicial Code, an application was made for a temporary injunction to a court consisting of a Circuit and two District Judges. The application was denied and this appeal was taken.

The industrial siding in question diverges from the main line of the Railroad Company, and was built many years ago for the convenience of industries then located on it. At the present time J. K. Shippey and the National Bonded Warehouse are the only industries served by it. The siding is all upon the right of way of the Railroad Company.

On August 2, 1923, the Railroad Company notified the Warehouse Company, that unless it signed a standard form of contract in respect to the sidetrack, its use and maintenance, which had been submitted to it, the service would be discontinued after August 15th. The Warehouse Company made complaint to the Public Service Commission. The Commission advised the Railroad Company that no application from the Company had been made to the Commission for such authority, which, under its Rule 14, was necessary before the service could be discontinued. However, on August 28th a full hearing was held by the Commission with the parties present, and as a result of such hearing it was ordered that, effective

immediately on receipt of the order, the Railroad Company should restore the service. Thereupon this bill was filed.

The bill avers that the Warehouse Company's premises are two city blocks, or 1600 feet, from the Railroad's public team tracks, which are adequate in size and construction conveniently and properly to handle all the public business, including that of the Warehouse Company; and that since the discontinuance of switching service on August 15th, conformably to the notice given, the Railroad has been ready to serve that industry on public team tracks; and that industrial sidings like the one in question have been put in without any care to avoid undue discrimination between interstate shippers in cost of transportation. It says that of the business done over the side track 85 per cent. is interstate. The Railroad Company therefore avers that if it does not continue the service as required by the order, it will be subject to penalty under the Georgia state law, and that if it obeys the order it will be guilty of undue discrimination under the interstate commerce law, and so will be subject to a heavy penalty in the federal jurisdiction.

The bill further alleges that the side track is out of repair and that in order to put it in proper condition it will require an expenditure of $440, that the receipts from the switching are but a small part of the cost of it and that enforced compliance with the order will thus deprive the Company of its property without due process of law.

The order made by the Commission was based on its General Order 14, promulgated December 23, 1909, which provided that any and all facilities and privileges enjoyed by shippers to which they were entitled by law or any rule of the Commission, whether granted by voluntary action on behalf of the railroad companies or otherwise, should not be discontinued without the consent of the Railroad Commission.

The three-judge court refused the application, on the ground that Rule 14 had not been complied with. Rule 14 is a reasonable rule and the Commission was fully justified in refusing to sanction a discontinuance of service until a petition had been filed with the Commission and a showing made. The doubt which arises in our minds is whether the Public Service Commission, by its consent to a full hearing of the issue without a formal petition and an order based on the merits, did not waive the defect of a petition. The action of the Company in discontinuing the service without a petition was arbitrary and defiant, but the subsequent action of the Commission seems to have condoned the fault in such a way as to prevent our making it a reason for not looking farther into the issues now raised by the Company in its bill.

It is said that the requirement of the continuance of the service deprived the Company of its property without due process of law, in violation of the Fourteenth Amendment, because the service rendered by the side-track was much greater in out-of-pocket cost than the compensation. This can not be sustained. The service has been rendered for years. It was a voluntary arrangement, and under its statutory powers (§ 2664, Georgia Code, 1910) was made irrevocable by the Public Service Commission under Rule 14, except by consent of the Commission. The spur track was for a public purpose. *Union Lime Co.* v. *C. & N. W. Ry. Co.*, 233 U. S. 211. The requirement that such a service should not be discontinued without notice and hearing was clearly within the police power of the State. *Chicago & Northwestern R. R. Co.* v. *Ochs*, 249 U. S. 416; *Lake Erie & Western R. R. Co.* v. *Cameron*, 249 U. S. 422; *Railroad Commission* v. *L. & N. R. R. Co.*, 148 Ga. 442. Even if the cost of the switching is more than what is received for it, we can not determine on any showing made by the Company that the switching does not work a benefit

in the increased business that the Company gets, or may get, by reason of the added facilities furnished by the switching. The switch is a small part of the whole railway, and the mere fact that the switching may not be profitable by itself can not be held to be a confiscation of property, even if it involves a loss. See *Fort Smith Light & Traction Company* v. *Bourland*, 267. U. S. 330.

It seems to be the contention of the Company that, since 85 per cent. of the business done on the side track is interstate commerce, the power to order its establishment or abandonment is vested in the Interstate Commerce Commission, and that the state commission is without authority in the premises. Such a claim is in the teeth of the Transportation Act of 1920, 41 Stat. 456, c. 91, § 402, par. 22, which provides that the authority of the commission conferred by § 402 over the extension or abandonment of interstate railway lines shall not extend to the construction of spur industrial or side tracks. See *Railroad Commission* v. *Southern Pacific Co.*, 264 U. S. 331, 345.

The question whether the continuance of the service on this industrial track violates the Interstate Commerce Act as unduly discriminatory, is one that involves issues not primarily for the courts, but is for the Interstate Commerce Commission. It requires a consideration by experts of the benefit of the use of such a siding as compared with that of other sidings, in connection with the rates in interstate commerce, to determine whether there is undue discrimination between shippers. The Railroad Company is therefore in no position to appeal to the courts on this ground until it has invoked the investigation and decision of the Interstate Commerce Commission upon the concrete facts in a proper manner. See *Great Northern Railway* v. *Merchants Elevator Co.*, 259 U. S. 285, 291, and the cases cited on page 295. If

and when the Commission shall have made such an investigation and have found the existence of undue discrimination, its order may well not be a specific direction against a continuance of service on a particular siding, but an order upon the Company to remove the undue discrimination between interstate shippers, giving discretion to the Company to adopt a satisfactory method of meeting the requirement. Compare *Houston & Texas Railway* v. *United States,* 234 U. S. 342, 360; *American Ry. Express* v. *Caldwell,* 244 U. S. 617, 624. In any event, relief can not be had by this bill, on the ground of undue discrimination, at the present stage of the controversy.

*Affirmed.*