**HARPER et al. v. ST. LOUIS SOUTHWESTERN RY. CO.**

(Circuit Court of Appeals, Eighth Circuit. October 27, 1926.)

No. 7123.

1. **Railroads** ⬯225—**If public necessity requires, railroad can be required to install public track, where there is private spur track constructed and maintained under private contract.**

Even though a spur track be private, constructed and maintained under private contract, if and when public necessity requires public track at that point, railroad can be compelled to install it, as all such private contracts are subject to and must give way before public necessity.

2. **Railroads** ⬯225—**Public necessity for additional industrial side trackage ordered by commission held not shown.**

Public necessity for industrial side trackage, in addition to spur track constructed under private contract, but which public was permitted to use, *held* not shown, so as to authorize commission's order therefor.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by the St. Louis Southwestern Railway Company against Ed. Harper and others. From a decree of perpetual injunction, defendants appeal. Affirmed.

William T. Hammock, of Little Rock, Ark. (H. W. Applegate, of Little Rock, Ark., Brooks Hays, of Russellville, Ark., and Sam T. Poe, Tom Poe, and J. S. Utley, all of Little Rock, Ark., on the brief), for appellants.

A. H. Kiskaddon, of St. Louis, Mo. (J. R. Turney, of St. Louis, Mo., and W. T. Wooldridge, of Pine Bluff, Ark., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge. This is an appeal from a decree permanently enjoining the members of the Railroad Commission of the state of Arkansas and two prosecuting attorneys of that state from enforcing an order of the commission concerning a spur or side track ·at Buffo, Ark.

In 1913, John Buffo owned a large rice farm adjacent to the railway line and half way between Gillett (a small station) and Hyden (a siding), which were five miles apart. Desiring a convenient shipping place, he made a contract with appellee on June 25, 1913, for a private spur track opposite his farm. This contract was lengthy and rather formal. The substance, as to installation of the spur, was·that Buffo was to furnish right of way, prepare the grade for the rails and furnish the cross-ties, switch ties and track or bridge timbers and that the railway would furnish all steel and lay the track, title to remain in each party to the material furnished by him or it. Buffo was to pay any taxes assessed against the spur; was to indemnify against damages on account of or arising out of the operation of the spur and to remove all timbers at the termination of the contract. While it was expressly stated that the spur was a private track for the use of Buffo, yet, appellee reserved the right to use the same for other shippers· or for its own purposes where such usage did not interfere with use by Buffo. Buffo had no authority to transfer or assign his rights except upon written consent of appellee. The term of the contract was for three years cer-

tain and could be terminated at any time thereafter by either party on 30 days' notice.

In accordance with this contract, the spur was installed in 1913. Its length was 335 feet, which would accommodate four cars. Several years before 1924 (when the complaint was filed before the commission) Buffo had sold his farm to C. H. Swinehart and had moved to parts unknown. Others besides Buffo and, later, Swinehart had used the spur. Swinehart and those using the spur had, from time to time, supplied ties to replace those in the spur. The use by Swinehart was very little, and the railroad made no objection to the use by others who desired to ship car lots from that point.

During the year 1924, a hard-surfaced road was being constructed in the vicinity of this spur and two of the contractors (McGeorge and Crandall) found it would be convenient to unload gravel at that point.

June 9, 1924, a petition was filed by eighteen shippers before the Arkansas Railroad Commission praying that the railroad "be required to extend five hundred (500) feet its spur or side track connection * * * at Buffo." This petition stated that the petitioners were engaged in rice farming and manufacturing lumber and cross-ties; that "at and during their harvest season" it was impossible to spot a sufficient number of cars "to take care of petitioners' rice crops and to move the same with reasonable dispatch" and that such extension would enable the railroad "to spot a sufficient number of cars on said spur or side track to meet the demand for cars at said destination."

Shortly after this petition had been filed, one of the road contractors, McGeorge, entered into contract with the railroad for an extension of 300 feet of this siding track. The other contractor, Crandall, made a similar contract for an additional extension of 150 feet beyond the McGeorge section of track. These contracts were made July 19, 1924, and were similar in contents. They provided for termination on 30 days' notice; that the contractor should "furnish all rails, fastenings, ties, grading and labor in constructing track" and that "title to the track material in the extension" should be in the contractor and upon termination of the contract "the carrier shall take up and deliver to the industry [contractor] such track material belonging to the industry as lie on its right of way, at the sole risk and expense of the industry." The contractors borrowed the necessary rails from other persons and constructed the extensions. The use of this track by the contractors in re-

ceiving gravel was dependent upon the construction of the highway near by and continued only while such portions were under construction.

After the making of these contracts, the petition before the commission was amended as follows:

"That at the time of the filing of the original petition herein, and for many years prior thereto, the St. Louis Southwestern Railway Company had been operating this spur, at Buffo, Ark., as a public spur. If, however, this spur was originally built as a private spur for John Buffo, this contract had long since been abandoned and the public had been permitted to use this spur and the same was held out to the public by the railway company as a public spur.

"Petitioners further state that after the filing of the original petition herein, the railway company under duress forced W. P. McGeorge and M. R. Crandall to sign separate contracts for a private or commercial spur. That said action was taken solely for the purpose of trying to avoid the granting of the petition herein and further annoying the petitioners.

"Wherefore, petitioners ask that an order be made either requiring the St. Louis Southwestern Railway Company to extend the spur they already have at Buffo, Ark., as originally prayed for, or to build another public spur seven hundred feet long to accommodate the public in loading and unloading freight that naturally comes to that destination."

Thereafter, the commission entered the order following:

"Be it remembered that on the 17th day and 18th day of September, 1924, there came on for hearing before the commission the petition of the petitioners, the answer and response of the St. Louis Southwestern Railway Company and testimony of M. R. Crandall, George W. Paul, J. M. Satchfield, G. W. Hand, J. B. Quinn, C. H. Swinehart, W. P. Smith, H. Strode, W. E. Cooksey, G. L. Sanders and W. E. McGraw, and various documents and exhibits copied into the testimony and the personal inspection of the spur or side track sought to be extended and the surrounding country by the Railroad Commission and the argument of counsel; and the Railroad Commission being well and sufficiently advised as to all facts and the law applicable thereto doth find: That some time in 1913 the St. Louis Southwestern Railway Company built a spur, or side track, which is now sought to be extended some two hundred (200) feet in length and that on the

25th day of June, 1913, a contract was entered into by and between John Buffo and the St. Louis Southwestern Railway Company for this spur, or side track, and as to whether this contract was entered into first, or the spur or side track built first, the commission is not advised. The commission further finds that a few years after said contract was entered into with John Buffo, the said John Buffo sold his lands, which adjoined said spur or side track, and left the state of Arkansas, and that from that time on until the filing of the petition herein the St. Louis Southwestern Railway Company used and operated this spur or side track as a public spur or side track. The commission further finds that as a result of the establishment of this spur or side track, and its use as a public spur or side track for a number of years, the inhabitants of the community adjacent to said spur or side track have improved their property believing this spur or side track to be a public spur or side track, and that the roads in that community have been built so as to direct the traffic to this particular place as a place where freight could be loaded and unloaded, and that there is annually, now, from 300 to 500 carloads of freight handled at this particular spur or side track. The commission further finds that although said spur or side track may have been originally built as a private spur or side track, that its long and continued use as a public spur or side track, used exclusively by the public as such a spur or side track, that the same was, at the filing of this petition, such a public spur or side track as if it had been originally built by the railway company for that purpose. The commission further finds that after the filing of this petition for the extension of this spur or side track, to meet the necessary requirements of the public at that place, that the railway company for the purpose of defeating the extension of this spur induced one W. P. McGeorge and M. R. Crandall to sign agreements attached to the testimony in this case for an extension to this spur or side track. The commission further finds that the said W. P. McGeorge and M. R. Crandall were forced to sign this agreement in order to get this spur extended, so that they could unload a few hundred carloads of gravel to do a special piece of work on a road nearby. That the unloading of this gravel was the only business the said W. P. McGeorge had, or will have, with this spur or side track and that M. R. Crandall would not have signed said agreement if the gravel could have been unloaded without it. The commis-

sion further finds that the business adjacent to this spur or side track fully justifies the extension of this spur or side track to a length of 700 feet instead of 200 feet and that said extension should be made. The commission further finds that the extension put on this spur or side track by W. P. McGeorge and M. R. Crandall amounts to approximately 500 feet more than the original 200 feet, that the railway company should be required, either, to take over the extension to its original spur or side track, or make an extension of its own. The commission further finds that a number of years ago the St. Louis Southwestern Railway Company designated this spur as Buffo Spur, and shows it on its time tables as a flag station where it receives and discharges passengers and receives and unloads freight for the public.

The commission therefore orders and directs the St. Louis Southwestern Railway Company to either acquire and maintain the spur or side track as now extended in a total length of 700 feet, or to add an extension of its own of 500 feet to the original spur or side track established at this place.

It is further ordered that said spur track shall be completed by January 1, 1925."

December 11, 1924, appellee filed its bill asking restraint of enforcement of the above order. On February 27, 1925, a decree of perpetual injunction was entered. From that decree this appeal is brought.

The grounds for relief, stated in the bill, are that there is no necessity for a public siding track at Buffo; that the effect of the order of the commission is to change a private spur track existing under a private contract to a public siding thus requiring the railroad to violate its contract which the commission has no jurisdiction to do; that such order is a taking of private property of the railroad for public use without due process of law in violation of the Constitution (Fourteenth Amendment, § 1); that the order is a burden upon interstate commerce in violation of the Constitution (article 1, § 8) and in violation of the Transportation Act (Act Feb. 28, 1920 [41 Stat. 456]); that there is no jurisdiction to make the order because of the Transportation Act and regulations made by the Interstate Commerce Commission.

The position of appellants is that the Buffo track (the original 335 feet) is the property of the appellee and had become so invested with the public interest by long-continued public use that the public could demand its continuance and extension; that

the order does not require installation of a new siding but continuance of one which had been voluntarily installed by the carrier and used by the public for years; that the commission has jurisdiction to make such order and that such order is not in conflict with the National Constitution nor with the Transportation Act.

Appellee concedes, in this court, the power of the commission to make orders required by public necessity or convenience concerning the installation, maintenance and continuance of spur tracks. However, it contends that it has no power to order acquisition or confiscation of a private industry track and its conversion into a public siding, and that this siding is a purely private track constructed and maintained under private contracts made with John Buffo (to whose rights Swinehart has succeeded) and McGeorge and Crandall. Therefore, it declares that there is but one issue which it states thus: "Is the track public or private?"

[1] We have no doubt that the commission has *jurisdiction* to determine whether a carrier should install or maintain (if already existent) a spur or industrial side track (Western & Atlantic R. R. v. Georgia Public Service Commission, 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753). We think the question of whether this particular order should be sustained does not entirely depend, as appellee contends, on whether this spur is a private or a public track. Even though a private track, constructed and maintained under private contract, yet, if and when the public necessity requires a public track at that point, the carrier can be compelled to install the same and all such private contracts are made subject to and must give way before the public necessity. 33 Cyc. pp. 141 and 143, and citations in notes 16, 17 and 28. Whether the commission has power to require the acquisition of a particular private track need not be here determined because the clear facts of this record require a disposition of the case on other grounds.

[2] Consideration of the facts logically divides into those controlling the extensions (McGeorge and Crandall trackage) and those controlling the Buffo trackage. As to the extensions, the evidence clearly shows that the only reason for and practically the only use of this trackage was for the temporary purposes of the two road contractors who wished to unload gravel to be hauled therefrom by them to the nearby road under construction. That usage is entirely over. Those contractors desire to take up the trackage and return the rails to the owners from which the contractors borrowed them and have been prevented only by this litigation. No public necessity is shown for the use of such additional trackage. Detailed evidence was introduced of the daily number of outgoing and incoming cars from and to this siding during the years 1922, 1923 and 1924. To test the need for this additional trackage in the future, the shipments of gravel to the road contractors should be eliminated as that usage and need was purely temporary and has ceased. The Buffo track had capacity for four cars. During this three-year period, there was but one day (January 1, 1923) when there were as many as four cars (eliminating gravel) at this siding. Only nine days showed three cars (July 20, 1922; November 2, 1922; June 12, 1924; October 4, 6, 7, 9, 24, and 30, 1924). It is thus shown by the convincing light of actual experience that even the Buffo trackage has not been used to its capacity, although the public has, during these years, had free access thereto. Also, it is shown that this siding is only 2½ miles on one side from Hayden (where there is a spur track of 9-car capacity) and on the other side from Gillett (where there are warehouses, a station and side tracks with a capacity of 55 cars) with good public road connections. Therefore, no semblance of public need has been shown for the extended trackage and the order of the commission has no basis in facts upon which it can rest. The proceedings before the commission and the order of the commission had but one object, that was, to procure this extension of trackage in addition to the Buffo trackage. The only purpose, in the order, for requiring anything concerning the Buffo trackage was as a necessary link to which the extension was to be attached. There was no controversy over the Buffo trackage as such. There was no need for such a controversy because that trackage had always been maintained by the interested parties and the public permitted to use it freely. No issue of the abandonment of that trackage appears in this matter.

The decree of the trial court must be and is affirmed.