## ST. LOUIS-SAN FRANCISCO RY. CO. v. ALABAMA PUBLIC SERVICE COMMISSION et al.

District Court, M. D. Alabama, N. D. at Montgomery. August 17, 1928.

No. 414.

1. **Constitutional law** ⊂⇒46(3)—Defendant may test constitutionality of penal statute in any criminal proceeding.

Defendant may test constitutionality of penal statute in any criminal proceeding which may be instituted, whether in state or federal court.

2. **Railroads** ⊂⇒227—State Public Service Commission held to have jurisdiction of question of railroad's right to discontinue train service on part of line running into another state (Code Ala. 1923, §§ 9713, 9730, 9731; Const. U. S. art. 1, § 8, cl. 3).

Alabama Public Service Commission held to have jurisdiction of question of continuance or discontinuance of trains on portion of line of railroad between stations in Alabama and Mississippi, under Code Ala. 1923, §§ 9713, 9730, 9731, requiring approval by commission of abandonment of service by transportation companies, notwithstanding commerce clause (Const. U. S. art. 1, § 8, cl. 3).

3. Railroads ⚙227—Railroad, discontinuing trains between points in different states, was required to secure approval of state Public Service Commission, and without such approval could not enjoin commission's action, or secure adjudication as to necessity of service (Code Ala. 1923, §§ 9713, 9730, 9731).

Railroad, which discontinued train service on part of line running between stations in different states, was required to apply to state Public Service Commission, under Code Ala. 1923, § 9713, and, on failure to comply with such statute, requiring approval of the commission, was not entitled to secure a preliminary injunction in federal court, or an adjudication that continuance of such service would unduly burden interstate commerce, in view of §§ 9730, 9731, 5350, 5399.

4. Public service commissions ⚙21—Public service commissions should not be interfered with except for unreasonable and unjust rulings.

Usefulness of · public service commissions should not be unduly hampered or interfered with, except where unlawful power is exercised, or sound discretion abused by unreasonable and unjust rulings.

5. Railroads ⚙227—Statute requiring approval of Public Service Commission before railroad may abandon portion of public service held within state's police power (Code Ala. 1923, § 9713).

Code Ala. 1923, § 9713, requiring permit from. Public Service Commission before abandonment by transportation company of any portion of its public service, is within state's police power.

In equity. Suit by the St. Louis-San Francisco Railway Company against the Alabama Public Service Commission and others. Decree in accordance with opinion, denying interlocutory injunction.

W. R. C. Cocke (of Cabaniss, Johnston, Cocke & Cabaniss), of Birmingham, Ala., for plaintiff.

Charlie C. McCall, Atty. Gen., of Alabama, and J. Q. Smith, Asst. Atty. Gen., of Alabama, for defendants.

Before FOSTER, Circuit Judge and CLAYTON and ERVIN, District Judges.

CLAYTON, District Judge. The plaintiff railway company is a common carrier, of freight and passengers, engaged in interstate and intrastate commerce. Its system of lines is within and through the states of Texas, Oklahoma, Arkansas, Kansas, Missouri, Tennessee, Mississippi, Alabama, and recently extended from Alabama to tidewater at Pensacola, Fla. Among the lines operated by the company is one between Birmingham, Ala., and Memphis, Tenn., and on it is the town of Amory, in Mississippi, 125 miles from Birmingham. Besides its other stations on its line in Alabama, running from west to east, are the towns of Sulligent (101 miles from Birmingham), Crews, Beaverton, Guin, Winfield, Glen Allen, Bazemore, Eldridge, Clark and Carbon Hill. The distance between Sulligent, the most westerly Alabama station, and Carbon Hill, is 39 miles and a fraction. Prior to June 18, 1928, the plaintiff for several years operated passenger trains between Birmingham, the eastern terminus of its lines in Alabama, and Amory, Miss., and other points west, four trains each day east-bound, and a similar number each day west-bound; that is, to and from Birmingham. The east-bound trains were numbered 105, 107, 921, and 925; the west-bound trains, 106, 108, 922, and 926. The following was the schedule of the east-bound trains between Sulligent and Carbon Hill:

| Station | Train No. 105 | Train No. 107 | Train No. 921 | Train No. 925 |
|---|---|---|---|---|
| Sulligent | | 2:09 AM | 12:38 PM | 5:23 AM |
| Crews | | | 12:45 " | 5:31 " |
| Beaverton | | | 12:51 " | 5:37 " |
| Guin | | | 1:02 " | 5:48 " |
| Winfield | | 2:45 AM | 1:17 " | 6:05 " |
| Glen Allen | | | 1:25 " | 6:14 " |
| Bazemore | | | 1:30 " | 6:19 " |
| Eldridge | | | 1:42 " | 6:30 " |
| Clark | | | 1:46 " | 6:34 " |
| Carbon Hill | | 3:23 AM | 1:56 " | 6:44 " |

And the schedule of the west-bound trains was as follows:

| Station | Train No. 922 | Train No. 926 | Train No. 108 | Train No. 106 |
|---|---|---|---|---|
| Carbon Hill | 10:55 AM | 6:59 PM | 1:35 AM | |
| Clark | 11:00 " | 7:04 " | | |
| Eldridge | 11:05 " | 7:09 " | | |
| Bazemore | 11:15 " | 7:20 " | | |
| Glen Allen | 11:20 " | 7:26 " | | |
| Winfield | 11:30 " | 7:33 " | 2:12 A.M | |
| Guin | 11:43 " | 7:48 " | 2:28 " | |
| Beaverton | 11:53 " | 7:58 " | | |
| Crews | 11:59 " | 8:05 " | | |
| Sulligent | 12:14 PM | 8:14 " | 2:48 AM | |

On the plaintiff's line, the distance from Birmingham to Pratt City is about 7 miles, Oakwood 11, Adamsville 14, Lindbergh 19, Bessie Junction 20, Palos 21, Quinton 23, Wyatt 26, Dora 28, Samoset 30, Benoit 32, Cordova 34, Alma 38, Jasper 42, McCullum 45, Hillard 49, Liston 51, Townley 53, Cedrom 56, Pocahontas 58, Carbon Hill 61, Kansas 62½, Clarke 64½, Eldridge 67, Bazemore 73, Glen Allen 76, Winfield 80½, Guin 87½, Beaverton 94, Crews 98, Sulligent (Ala.) 101 miles, and Gatman (Miss.) 107 miles, Cauhorn 110, Greenwood Springs 111, Wise Gap 113, Quincy 115, Walden 119, Willcox 121, Aberdeen Junction 124, and Amory 125 miles. A simple mathematical calculation

will show the distance from any small station to a larger station, where the railroad company is still giving service, notwithstanding the abandonment of trains 925 and 926.

On June 18, 1928, plaintiff discontinued the operation of trains 925 and 926 between Carbon Hill, Ala., and Amory, Miss., without having made any application to, or without having obtained the approval of, the Alabama Public Service Commission, but continued their operation between Carbon Hill and Birmingham, so that the local service previously afforded by the two trains was eliminated only as to the Alabama stations of Sulligent, Crews, Beaverton, Guin, Winfield, Glen Allen, Bazemore, Eldridge, and Clark, and covering a distance of between 39 and 40 miles.

Section 9713 of the Code of Alabama of 1923 provides that:

"No transportation company * * * shall abandon all or any portion of its service to the public * * * unless and until there shall first have been obtained from the commission a permit allowing such abandonment."

Section 9730 of the Code of Alabama is that:

"Any transportation company which willfully fails to comply with any provisions of this article or which abandons any service without first obtaining the consent of the commission * * * shall forfeit to the state of Alabama not over one thousand dollars for each offense, the amount to be fixed by the court, and to be recovered in a civil suit by the state, instituted in the circuit court of Montgomery county, Alabama."

And section 9731 of the Code states that:

"Every violation of the provisions of this article, or of any order, decision, * * * or requirement of the commission, or any part or portion thereof, by any transportation company, is a separate and distinct offense, and in case of a continuing violation each day's continuance thereof shall be a separate and distinct offense."

Furthermore, section 5350 of the Code of Alabama in substance stipulates that every officer, agent, or employee of any railroad corporation, who shall violate or procure or aid any violation by such common carrier corporation, of any of the statutes of the state of Alabama relating to adequate service, or who shall fail to obey, observe, or comply with any order of the Public Service Commission, relating to adequate service, shall be guilty of a misdemeanor, and on conviction shall be fined not exceeding $1,000, to be fixed by the court, and section 5399

of the said Code provides in substance that every officer, agent, etc., of any common carrier or corporation, who shall violate or who aids or abets any violation of any order of the Public Service Commisssion, shall be guilty of a misdemeanor, and upon conviction shall be fined a sum not exceeding $500 for each offense.

The plaintiff in its verified bill states several reasons why it should not be compelled to reinstate its trains 925 and 926, among these that the operation of such trains would entail great loss upon the plaintiff, and that, if the commission should order the continuance of such trains, the excessive loss to the plaintiff would be in effect confiscatory. It is alleged that, as a typical week for trains 925 and 926 between Amory, Miss., the terminus of those trains in Mississippi, and Carbon Hill, Ala., from April 15 to April 24, 1928, inclusive, train No. 925 earned a gross revenue of 15 cents per mile, and train No. 926 earned a gross revenue of 24 cents per mile, per day, and that the operating cost of each of these trains between such points equaled or exceeded $1 per mile per day, entailing an operating loss of about 85 cents per mile per day; however, the defendants offer affidavits tending to contradict such claim made by the plaintiff.

The plaintiff avers that the ticket sales for the stations named during the month of May, 1928, divided between intrastate and interstate sales, were—Sulligent, state $97, interstate $441.36; Crews, state $3.54, interstate, nothing; Beaverton, state $2.15, interstate $5.85; Guin, state $296.71, interstate $151.51; Winfield, state $428.07, interstate $289.76; Glen Allen, state $11.26, interstate, nothing; Bazemore, state $16.07, interstate $10.55; Eldridge, state $38.05, interstate $5.80; but that the figures given for Winfield and Sulligent, both intrastate and interstate, include also ticket sales for trains 921, 922, 107, and 108.

The federal census of 1920 gives the population of the villages, to wit: Sulligent 1,071, Crews 163, and Beaverton 165, in Lamar county, with an estimated population of 20,000; Bazemore 100, and Glen Allen 109, in Fayette county, 20,000; Winfield 753, and Guin 596, in Marion county, 25,000; Clark, none, Eldridge 125, and Carbon Hill 3,000, in Walker county, 60,000. Plaintiff also alleges, and produced affidavits tending to support the same, that for those stations which, according to its schedule, do not have the service of two trains each way a day, the would-be passenger patrons of the rail-

road have easy access to the larger stations of Winfield, Carbon Hill, and Guin, where additional trains stop each way.

[1] We do not agree with the plaintiff's contention, set up in the bill and urged in the oral argument, that it cannot test the constitutionality of any or all of the Alabama statutes except in the federal court. The Alabama law provides for the review of any action of the commission in the state court. Moreover, if there be a federal question in the case, and the plaintiff should consider itself aggrieved by the decision of the Alabama Supreme Court thereon, the question, of course, could be submitted to the Supreme Court of the United States for final determination. It goes also without saying that no unconstitutional penal statute can deprive a defendant of the right to review and test validity in any criminal proceeding which may be instituted. Doubtless this proposition is so elementary that amplification or further comment is unnecessary.

[2, 3] Under the allegations of the bill, the denials of the answer, and the affidavits tending to support each such pleadings, the question is raised whether or not the commission's continuance of the two trains would constitute any material interference with interstate commerce. In the present state of the controversy, the court is not sufficiently informed by the facts now before it, which seem to be in dispute, as to which contention is correct. Courts do not have the facilities for obtaining and presenting all the facts and circumstances relating to such a dispute. Such facilities are possessed by the plaintiff and by the defendant commission. The court is entitled to the further help of each, so that all the facts pertaining to the case may be fully adduced and presented. Whether or not the continuation of the two trains shall be declared confiscatory, two factors enter into the equation—service and convenience to a substantial part of the traveling public, justifying reasonable expense of operation; or great loss entailed upon the plaintiff, wholly disproportionate to the public benefit. The commission has not officially investigated the question, or reached any conclusion thereon; therefore we think the court should not at this time interfere with the orderly processes of the Alabama statutes and the lawful actions of the state agents or agencies. Compare W. & A. v. Public Comm., 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753.

The plaintiff insists, also, that trains 925 and 926 were operated in interstate commerce, and that, therefore, the matter of their discontinuance or their continuance was not within the jurisdiction or control of the Alabama Public Service Commission; and, further, if the plaintiff be required to first obtain the consent of the commission before discontinuing trains 925 and 926 west of Carbon Hill, that it would be subject to enormous fines and penalties, and its officers and agents to prosecution, in the event of the plaintiff's refusal to reinstate trains 925 and 926 into service west of Carbon Hill; that such penalties would be in hostility to due process and equal protection of the law provided by the Fourteenth Amendment to the Constitution of the United States; and that sections 9713 and 9730 of the Code of Alabama seek to impose an unreasonable burden upon and regulation of interstate commerce, in violation of the commerce clause of the Constitution of the United States (article 1, § 8, cl. 3). Again, compare W. & A. v. Public Comm., supra.

It seems to us that, if the commission is without authority over the matter of the discontinuance of the two trains, simply because they have been operated out of Alabama and into Mississippi 24 miles, to Amory, then it would be easy for any railroad company to discontinue any of its intrastate trains without the approval of the Alabama Public Service Commission, by simply extending the operation of such trains a few miles into an adjoining state. Such would not be a use, but would be an abuse, of the commerce clause, and we think .that the conduct of the railroad company here cannot be justified, because in proper cases protection is afforded to interstate commerce.

As the cause is now presented, it appears that the action of the plaintiff in discontinuing the service without a petition to the Public Service Commission cannot be approved; it is based upon apprehension, not well founded, rather than upon justifying actuality—wrong done to plaintiff, or even imminently threatened unlawful injury. But under the circumstances of this case the conduct of the plaintiff need not be characterized as "arbitrary and defiant," for we think that discontinuing the two trains without approval of the Public Service Commission was no more than an honest mistake, based upon the plaintiff's plausible, but unsound, reasoning.

Upon the hearing it was made manifest to the court that the Alabama authorities would take action against the plaintiff and its agents—indeed, it may be that they are in duty bound so to do—under the provisions of the statutes hereinbefore recited, and

for that reason the plaintiff now asks for interlocutory injunction.

It is not to be assumed that the commission, clothed with administrative authority and with quasi legislative and judicial power, will exceed law and justice by exacting of the plaintiff a public service not reasonably balanced by a fair return, if such balancing of the public good with the expense entailed upon the plaintiff is practicable, and of benefit to a considerable number of people, and not unduly onerous upon the plaintiff, taking into consideration all the facts and circumstances of and incident to the case. The pertinent observation of current history may be here indulged that the Public Service Commission has recently in several cases, in some material particulars, at least, analogous to this case, permitted railroad companies to discontinue the service of certain local trains, where they were operating at a material loss, because facts and circumstances had arisen, such as the loss of passenger patronage, where the public has largely resorted to travel by motor busses and automobiles, induced by relative happenings such as improved roads, largely encouraging vehicular traffic. The plaintiff has not submitted a case of obvious interference with interstate commerce, or one which, as it now stands, justifies a preliminary injunction; and we hold that the plaintiff should have made its application to the Alabama Public Service Commission for the discontinuance of the two trains.

[4] It is to be remembered that the Congress could not hear, fairly consider, and adjust the intricate matters of passenger and freight rates; so the Interstate Commerce Commission was created, and vested with ample regulatory and administrative powers over passenger and freight traffic between the states. Of course, the law of Congress in that field is paramount, and harmonizes with the purpose of the commerce clause. So, likewise, when it was apparent that the state Legislatures could not adequately deal with intrastate problems arising under attempts to regulate the passenger and freight rates within the states, and cognate things, such as the discontinuance of trains, compelling the erection of suitable passenger station buildings, etc., the states created Public Service Commissions, with appropriate authority under the police power reserved to them. The usefulness of such Public Service Commissions is not to be unduly hampered, or even interfered with, except where lawful power is exceeded, or sound discre-

tion is abused, by unreasonable and unjust rulings and orders. Mindful of the wisdom of such enactments, the federal courts have sedulously recognized the benefits of such commissions; and the proper rules and orders of such commissions—the Interstate Commerce Commission and the state commissions as well—have been upheld. The courts have not interposed, except where the law has been transcended, or power and discretion abused. It would be a waste of space to collate the numerous cases upholding, and those disapproving, the acts of such commissions.

If the observations just made be banal, let the reader turn to the article "Public Service Commissions," in July, 1928, Am. Bar Ass'n Journal, p. 359, by Hon. Wm. D. Guthrie, where his learned and illuminating discussion lifts the subject out of the hackneyed class. Of course, one need not agree with all that is said in the able critique.

[5] Now, going on, the Alabama law requiring the regulating body of the state to be advised of a proposed change seriously affecting transportation conditions, and here to some small extent affecting interstate commerce, is well within the police power of the state, and is to be exercised for the benefit of the traveling public, with due regard to the rights of the plaintiff to be free from serious loss, in its nature confiscatory, by the operation of any public service.

However, the development of the law by adjudications and the attitude of the courts in regard to controversies like the one before us is aptly shown in cases lately decided by the Supreme Court of the United States. From Lawrence v. St. L.–S. F. Ry., 274 U. S. 588, 47 S. Ct. 720, 71 L. Ed. 1219, these apposite words are taken:

"We have no occasion to determine whether the Oklahoma act is obnoxious to the federal Constitution. But, as bearing upon the propriety of issuing the temporary injunction, the fact is important that the controversy concerns the respective powers of the nation and of the states over railroads engaged in interstate commerce. Such railroads are subject to regulation by both the state and the United States. The delimitation of the respective powers of the two governments requires often nice adjustments. The federal power is paramount. But public interest demands that, whenever possible, conflict between the two authorities and irritation be avoided. To this end it is important that the federal power be not exerted unnecessarily, hastily, or harshly. It is

important, also, that the demands of comity and courtesy, as well as of the law, be deferred to."

The language quoted evidences the animating spirit of the federal courts. Compare Henderson W. Co. v. Corp. Comm., 269 U. S. 278, 46 S. Ct. 112, 70 L. Ed. 273, where the court at page 280 (46 S. Ct. 113), Mr. Chief Justice Taft speaking, said:

"The District Court puts refusal to grant the injunction in the present case on the ground that the complainant had not sufficiently exhausted its remedies before the Corporation Commission. We think the District Court was entirely right in this."

Plaintiff alleges that the passenger train service now furnished to the railroad stations hereinbefore mentioned is reasonably adequate; but, as has been indicated, we are not so convinced, in view of the defendants' denial of that proposition. But it seems to be probable, under all the facts and circumstances of the case, that such assertion by the plaintiff may be true. However, there ought to be a ruling by the Commission, after full and fair investigation, which should lead to a just ascertainment.

Of course, the cause will remain before this court until the proper time comes for further action; in its present status it cannot be finally disposed of. Whatever course the plaintiff may pursue or the defendants take, the case must await for such further action or determination as developments may render requisite.

Accordingly, appropriate order is entered, and interlocutory injunction is denied.

FOSTER, Circuit Judge, and ERVIN, District Judge, concur.