KENOSHA MOTOR COACH LINES, INC., Respondent, vs. PUBLIC SERVICE COMMISSION, Appellant: J. G. VAN HOLTEN & SONS, INC., and another, Intervenors.*

*March 10—April 12, 1949.*

* Motion for rehearing denied, with $25 costs, on June 7, 1949.

510

512

*Ward Rector,* counsel for the Public Service Commission, for the appellant.

*Quarles, Spence & Quarles* of Milwaukee, for the intervenor General Electric Company.

*Ralph J. Drought* and *O. A. Grootemaat,* both of Milwaukee, for the intervenors J. G. Van Holten & Sons, Inc., and others.

For the respondent there was a brief by *Stephens, Cannon, Bieberstein & Cooper,* attorneys, and *Rieser & Mathys* of counsel, and oral argument by *Frank M. Coyne* and *Robert M. Rieser,* all of Madison.

BROADFOOT, J. The questions raised by this appeal are as follows: (1) Did the Wisconsin Public Service Commission exceed its authority and was it without jurisdiction when it ordered the respondent to restore the interstate freight service which it had abandoned? (2) Was the judgment of the circuit court for Milwaukee county *res judicata* of the power of the Wisconsin Public Service Commission in this proceeding?

As to the first question the appellant contends that by virtue of sec. 196.81, Stats., it has jurisdiction. That section reads as follows:

"No public utility or railroad as defined in chapters 195 and 196 shall abandon or discontinue any line, branch line or extension or service thereon without first securing the approval of the commission. In granting its approval, the commission may impose such terms, conditions or requirements as in its judgment are necessary to protect the public interest. Any public utility or railroad abandoning or discontinuing in pursuance of authority granted by the commission shall be deemed to have waived any and all objections to the terms, conditions or requirements imposed by the commission in that regard. Nothing herein contained, however, shall be construed to eliminate the necessity of obtaining the consent of the proper

municipal authorities as required by section 193.11. The provisions of this section shall apply only so far as the constitution and laws of the United States permit."

It further contends that the Interstate Commerce Commission has no jurisdiction here because the business of the respondent is excluded from the provisions of the Interstate Commerce Act by sec. 1 (22) thereof, 49 USCA, which reads as follows:

"The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one state, or of street, suburban, or interurban electric railways which are not operated as a part or parts of a general steam-railroad system of transportation."

The respondent, on the other hand, contends that the Interstate Commerce Commission has exclusive jurisdiction of the interstate freight service of the respondent and that the exclusion referred to above is only applicable when there is to be physical construction of a new line or the physical abandonment of an existing line, and that it does not cover the abandonment of operation or service.

The respondent further contends that the Interstate Commerce Commission exercised jurisdiction and in effect consented to the abandonment of the interstate freight service by dismissing the application for abandonment and the commission's own order suspending cancellation of respondent's tariffs.

There is no doubt that our dual system of state regulation and of federal regulation is confusing. Persons subject to such regulations are often confused by the multiplicity of, and sometimes conflicting, regulations of the state and federal agencies charged with the enforcement of the regulations. That is unfortunate. The situation is analogous to the dual

regulation of employment relations under the enactments of the state and of the federal government. This question has been carefully reviewed in the case of *Wisconsin Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473; 479–482, 279 N. W. 673. The following quotations from that opinion with the authorities there cited clearly state the rule:

"The power of the state of Wisconsin to subject labor relations to regulation is based upon the police power; that of the federal government to deal with the same subject is grounded upon and limited by the commerce clause, and is sustained upon the theory that strikes, boycotts, and other disturbances arising from labor disputes in industries engaged in interstate commerce so proximately obstruct and burden interstate commerce as to bring labor relations in such industries within the power of congress.

"The state may, therefore, regulate labor relations in the interests of the peace, health, and order of the state, and the federal government may regulate this relationship to the extent that unregulated it tends to obstruct or burden interstate commerce. Obviously, a possibility of conflict between these powers exists only as to the portion of the field with which congress has competency to deal. In the absence of a federal statute either dealing with or pre-empting this field, the police power of the state has full operation, provided no undue or discriminatory burdens are put upon interstate commerce.

" . . . when congress has pre-empted the field the power of the state with respect to interstate commerce terminates.

"It is not seriously contended that the Wisconsin act, which is conceded to be nearly identical both in purpose and method with the national act, discriminates against or unduly burdens interstate commerce. The conclusion is inevitable that it constituted a valid exercise of the police power of this state, even as to those labor relationships which fall within the commerce clause, unless the national act has excluded its operation in this field. That congress, if it clearly evidences such an intention may, with respect to matters falling within its powers under the commerce clause, completely exclude the operation of existing or subsequently-enacted state statutes which in the

exercise of the police power purport to regulate this field, is not open to question.

"It is equally well established, however, that the intention of congress to exclude states from exercising their police power must be clearly manifested."

Applying the rule stated in the *Rueping Case, supra,* it is apparent that the appellant has jurisdiction unless the federal government has pre-empted the field. The respondent is a Wisconsin corporation, it is a common carrier, and it is operating under a franchise from the state of Wisconsin. "It is well settled, however, that the mere creation of the Interstate Commerce Commission, and the grant to it of a measure of control over interstate commerce, does not of itself, and in the absence of specific action by the commission or by congress itself, interfere with the authority of the states to establish regulations conductive to the welfare and convenience of their citizens, even though interstate commerce is thereby incidentally affected, so long as it is not directly burdened or interfered with." 9 Am. Jur., Carriers, p. 453, sec. 44.

A reading of the Interstate Commerce Act indicates that "interurban electric railways, which are not operated as a part or parts of a general steam-railroad system of transportation" were considered in a special class and were accorded special treatment. In at least three sections of the act they were given some exemption. In addition to par. (22) of sec. 1 they were also accorded special treatment in par. (1) of sec. 15a and in par. (1) of sec. 20a, 49 USCA. *United States v. Chicago North Shore R. Co.* 288 U. S. 1, 53 Sup. Ct. 245, 77 L. Ed. 583. Congress has not manifested a clear intention to pre-empt the field. The Interstate Commerce Commission itself has not only failed to act in the matter but has stated that in its opinion it is without jurisdiction. We do not hold that the Interstate Commerce Commission has no jurisdiction, nor do we concede that it has exclusive jurisdiction. In the case of *Western & Atlantic R. R. v. Georgia Public Service Comm..*

267 U. S. 493, 45 Sup. Ct. 409, 69 L. Ed. 753, the United States supreme court has also recognized that the federal government has not pre-empted the field nor does the Interstate Commerce Commission have exclusive jurisdiction in all matters affecting interstate commerce.

The order of appellant is not discriminatory, it places no undue burden upon interstate commerce, and it does not interfere in any way with interstate commerce. It was justified in entering its order now under review.

The contention of the respondent that the Interstate Commerce Commission assumed jurisdiction by its orders of February 27, 1948, and March 12, 1948, is without merit. Both orders were based upon the belief of that commission that it was without jurisdiction because of the provisions of sec. 1 (22) of the Interstate Commerce Act, 49 USCA.

The second question must be answered in the negative. The case before the circuit court for Milwaukee county was an action in equity to restrain the carrier from discontinuing its interstate freight service. There had been no prior order by the state commission, and the appellant was not a party to the action. The circuit court correctly held that it was without jurisdiction to issue an injunction upon the record presented to it.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the order of the Wisconsin Public Service Commission dated September 1, 1948.

ROSENBERRY, C. J. (*dissenting*). The order of the commission requires the plaintiff to "restore and thereafter render interstate freight service on its lines of interurban railway between Milwaukee and Hales Corners and between Milwaukee and Waukesha, respectively." It is my understanding an interstate freight service can only be rendered upon the filing of interstate freight rates with the Interstate Commerce Commission, service to be rendered pending the approval by the

Interstate Commerce Commission. Because interstate rates are necessarily involved the Interstate Commerce Commission has exclusive jurisdiction and the so-called exclusion clauses of the Interstate Commerce Act do not apply. Interstate service does not relate to "freight service" which is performed between termini wholly within a state.

I am therefore of the view that nothing is involved in this case but interstate rates, because interstate freight service can only be rendered on an interstate freight rate. This leads to the conclusion that the Public Service Commission has no jurisdiction to enter the order in question.

The fact that the Interstate Commerce Commission held it had no jurisdiction is not conclusive and the matter should have been brought before the federal courts for a final determination. I am therefore of the opinion that the judgment appealed from should be affirmed.

I am authorized to say that Mr. Justice FAIRCHILD and Mr. Justice WICKHEM concur in this dissent.