565 F.Supp. 153 (1983)
CONSOLIDATED RAIL CORPORATION, Plaintiff,
v.
PENNSYLVANIA PUBLIC UTILITY COMMISSION, et al., Defendants.
C.A. No. 83-6.
Special Court, Regional Rail Reorganization Act.
June 7, 1983.
*154 Robert L. Kendall, Jr., Philadelphia, Pa. (Jerome J. Shestack, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., John W. Rowe, Bruce B. Wilson, Charles E. Mechem, Consol. Rail Corp., Philadelphia, Pa., of counsel), for plaintiffs.
Richard S. Herskovitz, Asst. Counsel, Harrisburg, Pa. (John B. Wilson, Deputy Chief Counsel, Charles F. Hoffman, Chief Counsel, Pennsylvania Public Utility Com'n, Harrisburg, Pa., of counsel), for defendants.
Barbara L. Smith, Titusville, Pa. (Mahany, Roeder & Smith, Titusville, Pa., of counsel), for intervenors.
Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

MEMORANDUM AND ORDER
BRYANT, Judge:
This case is before the court on Consolidated Rail Corporation's (Conrail) motion for a preliminary injunction and declaratory judgment. The plaintiff seeks relief from an order of the defendant, Pennsylvania Public Utility Commission (PUC), compelling Conrail to continue operations to the Fieldmore Springs Track. We grant the plaintiff's motion for declaratory relief.
This action arises out of the defendants' attempt to preserve rail services on the Fieldmore Springs Track (FST) spur line, attached to the northern end of the Titus Secondary Track (TST) branch line. The FST is a two-mile railroad "spur," linked to the railroad transportation network only through its connection with the TST.[1]
Section 308 of the Regional Rail Reorganization Act of 1973 (3R Act) as amended by § 1156 of the Northeast Rail Service Act of 1981 (NRSA), 45 U.S.C. § 748, provides for the abandonment of rail lines by Conrail according to a specified procedure. Conrail must, first, file an application for approval of abandonment with the Interstate Commerce Commission (ICC). Once the application is filed, parties interested in continuing service on the line may submit an "offer of financial assistance" within 90 days. The offer may be either to purchase or subsidize the line. If no offer of financial assistance is filed, following ICC approval of abandonment, interested parties may request a valuation of the line and purchase it at 75% of net liquidation value. This abbreviated procedure, without prior listing, notice or newspaper publication, permits Conrail to abandon expeditiously unprofitable rail lines. Congress intended that Conrail efficiently abandon these lines to facilitate Conrail's economic recovery and its eventual return to the private sector. 127 Cong. Rec. H5956 (1981).
On November 30, 1981, Conrail filed an application with the ICC for approval of abandonment of the TST.[2] The TST runs in a northerly direction from Rouseville, Pennsylvania to Titusville, Pennsylvania, a distance of 15.8 miles. The FST meets the TST at Titusville. On March 1, 1982, the Titus Industrial Fund (TIF), an organization of rail shippers located on the FST, submitted an offer of financial assistance. Conrail and TIF were unable to reach an agreement on the value of the line and, subsequently, TIF withdrew its offer to purchase the TST.
In an order dated May 26, 1982, the ICC approved abandonment of the TST. The order explicitly withheld approval of abandonment *155 for the FST.[3] Noting that NRSA mandates an expedited abandonment procedure, the ICC emphasized that Conrail must adhere to the minimum procedural requirements of § 308 when applying for abandonment.
Notice of abandonment, including the net liquidation value of the TST, was published in the Federal Register on July 19, 1982. This publication authorized Conrail to discontinue service on the TST. Pursuant to § 308(e) of the 3R Act, Conrail was required to maintain the track intact for 120 days, giving potential buyers the opportunity to purchase the branch line at 75% of net liquidation value. Conrail claims that it voluntarily continued operating on the TST during the 120-day period, recognizing the TIF might tender a purchase offer. Conrail alleges that no offer was forthcoming. On November 18, 1982, Conrail notified shippers on the TST and the FST that rail services on both the branch and the spur lines would be terminated. The TIF filed a complaint with the PUC on November 23, 1982, seeking an order requiring Conrail to continue service on the FST. The PUC alleges that on December 1, 1982, Conrail embargoed service on the spur. Thereafter, on December 3, 1982, the TIF sought a PUC order compelling Conrail to continue rail services to the FST until an application for abandonment was properly approved, either by the ICC under NRSA, or by the PUC pursuant to 66 Pa.C.S.A. § 1102(a)(2).[4]
The PUC appointed Administrative Law Judge Michael Nemec as presiding officer. On December 15, 1982, Judge Nemec entered an interim order directing Conrail to continue service to the FST until further order.
Conrail filed an action in the United States District Court for the Eastern District of Pennsylvania on January 10, 1983, seeking injunctive and declaratory relief from the interim order of the PUC. The district court granted PUC's motion to dismiss on February 16, 1983, holding that the Special Court has exclusive jurisdiction over the complaint under § 1152 of NRSA. Conrail subsequently brought this action. The plaintiff alleges damages of $5,000 per week, the cost of continued operation on the TST line. In addition, Conrail claims that the statutory scheme of NRSA is threatened if Conrail may be precluded from abandoning and dismantling the TST as authorized by § 308. Conrail seeks an injunction barring the PUC from interfering with the abandonment of the TST or, alternatively, a declaratory judgment nullifying PUC's interim order.
Spur lines are technically exempt from ICC regulation under 49 U.S.C. § 10907[5] (Supp. V 1982). However, § 308 provides for the abandonment of spur lines *156 according to the same procedures required for abandonment of any trackage. 45 U.S.C. § 748.[6] If NRSA abandonment procedures are followed, state regulatory schemes are preempted. Absent proceedings under § 308 of the 3R Act, states are free to regulate the spur lines and require state approval for abandonment. Pennsylvania has chosen to regulate the abandonment of spur lines. See Pennsylvania Public Utility Code, 66 Pa.C.S.A. § 1102.
Conrail contends that the PUC is exceeding its authority by ordering Conrail to continue service to the FST. The TST branch line, Conrail claims, has been the subject of a proper NRSA abandonment procedure, and under federal law the spur line may be abandoned without prior ICC approval. It urges that the statutory scheme designed by Congress preempts the field, prohibiting regulatory action by the PUC which affects an authorized abandonment.[7]
The PUC argues that its order must stand. While acknowledging that the ICC has exclusive jurisdiction under NRSA to authorize abandonment of the branch line, the PUC nevertheless contends that it may order continuing service to the FST until the spur is properly abandoned. Inherent in the PUC's argument is the notion that permitting Conrail to discontinue service on the TST in effect amounts to the abandonment of the spur line without required authorization.
The PUC alleges that it "has at no time required continuation of service over the Titus Secondary Track or interfered with the abandonment of the track."[8] However, the PUC order specifically stated that
Consolidated Rail Corporation is ordered to continue to provide rail service to the section of tracks known as the Fieldmore Springs Track located in the City of Titusville and Oil Creek Township, Crawford County until directed otherwise by further order of this Commission. [Interim Order, Public Utility Commission, December 15, 1982.]
Inasmuch as the TST is the only line presently linked to the spur, the obvious purpose of the PUC order is to require Conrail to continue operating on that branch line.
Both parties wish to circumvent the requirements of NRSA abandonment procedures. Conrail, though completing abandonment procedures for only one line, is endeavoring to abandon both the TST and the FST. The PUC, by ordering Conrail to continue service to the FST, is impeding Conrail's approved abandonment of the TST.
The Commonwealth of Pennsylvania has jurisdiction over the abandonment of the spur track in the absence of ICC action. New York Central R.R. v. Pennsylvania Public Utility Comm'n, 188 Pa.Super. 647, 149 A.2d 562 (1959). The PUC may legitimately require that Conrail continue operating on the FST until Conrail files an application for abandonment and receives approval from the ICC or the PUC. Congress abbreviated the traditional abandonment procedures, it did not eliminate them. And although the likelihood of providing beneficial service on the FST once the TST is abandoned is remote, it would appear that until Conrail complies with a formal abandonment procedure, it may not discontinue operations on the spur.
However, Conrail has secured ICC approval to abandon the TST, and since no negotiated agreement for purchase thereof *157 was reached within 120 days of that approval, Conrail may abandon, and even liquidate, that 15.8 mile branch line. The ICC order preempts Pennsylvania law and any legislation or orders of the Pennsylvania PUC which would interfere with Conrail's efforts to implement the same.
Accordingly, judgment will be entered declaring Conrail may proceed to abandon the TST according to the terms of the ICC Order, Docket No. AB-167, May 26, 1982.
It is so ordered.
NOTES
[1] Both parties acknowledge that the Fieldmore Springs Track is a spur. As a spur line, the FST serves the industries located along the two-mile railway by connecting them to a single, major railroad artery. Historically, the railroad ran both north and south from the FST. The section running north has already been abandoned, leaving the TST as the only remaining railroad in the area.
[2] Both parties have indicated that Conrail's failure to apply for the abandonment of the FST was due to inadvertence. Defendants' brief at 8; transcript at 5.
[3] The ICC order stated:

An examination of the contents of this application leads to the conclusion that Conrail inadvertently failed to apply for authority to abandon its Fieldmore Track. As noted, the application only refers to the Titus Secondary, states that only 15.8 miles are being abandoned and, perhaps most significantly, only includes in Exhibit D data dealing with the Titus Secondary. Even if TIF knew by mid-February that Conrail planned on also abandoning the Fieldmore Track, the fact remains that since no application for that line was filed with the Commission, no abandonment or Section 308(d) purchase could occur. [ICC Abandonment Order, Docket No. AB-167, May 26, 1982.]
[4] The statute provides, in relevant part,

(a) General rule.  Upon application of any public utility and the approval of such application by the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, it shall be lawful:
(2) For any public utility to abandon or surrender, in whole or in part, any service, except that this provision is not applicable to discontinuance of service to a patron for nonpayment of a bill, or upon request of a patron.
[5] The state has exclusive power to regulate spur, sidetrack, industrial, team or switch lines wholly within one state. I.C.C. v. Oregon-Washington Railroad Co., 288 U.S. 14, 49, 53 S.Ct. 266, 277, 77 L.Ed. 588 (1932). The original ICC legislation was developed to assist the state in regulating industrial development within its boundaries by guaranteeing public access to the track lines. Western & Atlantic R.R. v. Georgia Public Service Comm'n, 267 U.S. 493, 45 S.Ct. 409, 69 L.Ed. 753 (1925).
[6] Section 308:

(a) General  The Corporation may, in accordance with this section, file with the Commission an application for a certificate of abandonment for any line which is part of the system of the Corporation. Any such application shall be governed by this section and shall not, except as specifically provided in this section, be subject to the provisions of chapter 109 of title 49, United States Code.
[7] The cases the plaintiff cites in support of its preemption claim do not address the issue in this case since ICC approval is not traditionally required for the abandonment of spur lines. 49 U.S.C. § 10907. Cf., Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981); In re Boston & Maine Corp., 596 F.2d 2 (1st Cir.1979).
[8] Written Objections of PUC why Motion of Conrail Should Not Be Granted, ¶ 4.