**CHICAGO, M., ST. P. & P. R. CO. v. CAMPBELL RIVER MILLS CO., Limited, et al.**

No. 6374.

Circuit Court of Appeals, Ninth Circuit.

Oct. 13, 1931.

Rehearing Denied Nov. 23, 1931.

F. M. Dudley, L. S. Crawford, and A. J. Laughon, all of Seattle, Wash., and C. W. Howard and J. W. Kindall, both of Bellingham, Wash., for appellant.

Walter B. Whitcomb, of Bellingham, Wash., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

The material facts in the instant case are not in dispute and are well stated in the opinion of the District Court, 42 F.(2d) 775, 776. They need not be repeated here in full, but an account of the previous litigation is of particular importance:

"In 1924 the plaintiff made complaint to the Department of Public Works of Washington that it was charged in excess of the local tariff rate. The plaintiff also filed complaint with the Interstate Commerce Commission, which tentatively reported that the Interstate Commerce Commission had not jurisdiction. Upon hearing before the Department of Public Works of Washington, the department found that, instead of paying $2.19, the local tariff rate, the plaintiff has been required to pay $2.42½ per thousand feet," a charge that it found unreasonable and unlawful to the extent of the excess. As no expense bills were filed or produced in the hearing, it was ordered that, if the parties could not agree upon the amount of the refund accruing to the mill company, a report should be made to the department within sixty days of such disagreement, so that such further orders as might be necessary could be filed. "The defendant company thereupon sought review before the proper court of Washington" under the provisions of section 10428, Remington's Code, Laws of 1911, p. 596, § 86, that reads as follows:

"§ 10428. Review. Any complainant or any public service company affected by any order of the commission, and deeming it to be contrary to the law, may, within thirty days after the service of the order upon him, or it, apply to the superior court of the county in which such proceeding was instituted for a writ of review, for the purpose of having its reasonableness and lawfulness in-

quired into and determined. * * * Upon such hearing the superior court shall enter judgment either affirming or setting aside the order of the commission under review."

Two separate and distinct grounds were urged on which the orders should be set aside: First, that the department of public works of Washington was without jurisdiction over the controversy because of the commerce involved; and, second, that the department erred in finding that the rates and charges assessed and collected were unjust, unreasonable, and otherwise unlawful, and that it erred in applying the $2.19 rate to the shipments of complainant.

Upon hearing before the superior court of Thurston county, Wash., the finding of the department was affirmed. An appeal was prosecuted to the Supreme Court of the state, where, after hearing, the judgment of the lower court was affirmed and the cause was "remitted to the said Superior Court for further proceedings in accordance herewith." A petition was presented to the Supreme Court of the United States for a writ of certiorari, which was denied.

"Thereafter, on June 30, 1929, the Department of Public Works computed the overcharge and awarded to the plaintiff the sum of $44,365.92, and $13,319.51 interest to that date, and 6% on the said principal sum from that date until paid. No payment being made, this action was instituted in the proper court of the state of Washington pursuant to the provisions of section 10433, Rem. Comp. Stat. of Washington," which reads as follows:

"§ 10433. Overcharge. When complaint has been made to the commission concerning the reasonableness of any rate, fare, toll, rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission shall determine that the public service company has charged an excessive or exorbitant amount for such service, the commission may order that the public service company pay to the complainant the amount of the overcharge so found, with interest from the date of collection.

"If the public service company does not comply with the order for the payment of the overcharge within the time limited in such order, suit may be instituted in any court of competent jurisdiction to recover the same, and in such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated. If the complainant shall prevail in such action, he shall be al-

lowed a reasonable attorney's fee, to be fixed and collected as part of the costs of the suit."

Thereafter the cause was removed to the United States District Court for the Western District of Washington, from whose decision comes this appeal.

The lower court based its judgment upon two principal grounds: First, that the decision of the Supreme Court of the state of Washington made the matter in controversy res adjudicata; and, second, that the shipment in question was, in fact and in law, an intrastate shipment.

 Since the question of res adjudicata is a liminal one, we will consider it at the outset.

It is conceded by the appellee that the writ of review was sought, granted, and affirmed under section 10428 of the Compiled Statutes of Washington, Remington, 1922, supra. Under this section, on review, it is necessary to fix the amount of the overcharge to be refunded. Such overcharge is collectible, in a separate suit only under section 10433, supra.

In our opinion, the Supreme Court of Washington has interpreted the effect to be given to section 10433 and suits brought thereunder. We accept this interpretation of the Washington statute by the highest court of that state.

In State ex rel. Tacoma Eastern Railroad Co. v. Public Service Commission et al., 112 Wash. 629, 636, 637, 192 P. 1079, 1082, the state Supreme Court made it clear that it regarded a suit brought under section 10433 as being one on the merits, and opening up all issues and rendering available all defenses. Since the issue of intrastate shipment vel non is one of fact as well as of law, we believe that the final determination of such issue would have been possible in the state courts only in a suit brought under section 10433. Such was not the suit taken to the state Supreme Court for review, and therefore that tribunal's affirmance of the superior court's judgment is not res adjudicata, either in the state or the federal courts.

In the Tacoma Eastern Case, supra, the state Supreme Court used the following language: "Other contentions made by counsel for the railroad company have to do with the merits of the case; that is, such contentions challenge the correctness of the commission's decision upon the merits. If the decision and order of the commission in terms awarding recovery to Belcher as assignee of the lumber company were a final decision, capable of being enforced as a final judgment, we would probably feel called upon to dispose of these contentions, but such is not the effect of the decision and order of the commission, nor of the judgment of the superior court affirming the decision and order, as will be readily seen by reference to the quotation of the statute embodied in the above-quoted portion of our decision in Belcher v. Tacoma Eastern R. Co., supra [99 Wash. 34, 168 P. 782]. That order and decision gives to Belcher no right save the right to sue in the courts to recover upon his claim, in which suit the decision and order of the commission 'shall be prima facie evidence of the facts therein stated.' To review in the superior court or this court the decision of the commission upon the merits of Belcher's claim would be to attempt to decide the very questions which will be ultimately submitted for decision in the courts when Belcher seeks recovery therein of the award made him by the commission. We are not overlooking the decision of this court in State ex rel. Tacoma Eastern R. Co. v. Public Service Commission, 102 Wash. 589, 173 P. 626, wherein it was held that proceedings of this nature before the Public Service Commission are reviewable in the courts, by reason of the broad language of section 86, Laws of 1911, p. 226; Rem. Code §§ 8626–86; but we do not think that decision means that the merits of the controversy are reviewable in the courts when removed thereto by writ of review from the Public Service Commission, like when the courts are called upon to review an order of the Public Service Commission which becomes a final adjudication enforceable as a judgment. Of course the jurisdiction of the Public Service Commission and other questions which may be decided purely as questions of law, may be reviewed in such cases. But for the courts to attempt to review the merits of the decision of the commission we think, as already said, would be to try issues *which must be ultimately tried in the action which may be brought to recover the award of the commission*." (Italics our own.)

Dispelling any doubt as to the full import of its interpretation of section 10433, the same tribunal said, in Tacoma Grain Co. v. Northern Pacific Ry. Co., 123 Wash. 664, 213 P. 22, 23: "Nevertheless, since section 10433 provides that suit *must* be brought on the *award* of the department, and we have decided that in such suit the *merits* of the controversy as to the *justness* of the award

may be put in issue, tried, and determined [citing the Tacoma Eastern Case, supra], appellant had an undoubted right to institute its action in a court of general jurisdiction upon the award." (Italics our own.)

Assuredly, the words "merits" and "justness" are sufficiently broad and sweeping to include the question of intrastate commerce vel non, which in the instant case not only was, in turn, determinative of the jurisdiction of the department of public works, but of the very "justness" of the rate fixed by the department, as is indicated by the appellant's answer to the amended complaint: " * * * The said Department of Public Works of Washington, in making its findings and orders attached to the amended complaint herein, fixed and awarded reparation and refunds to the plaintiff, * * * to the basis of the rates and charges of the railroad company prescribed in the railroad company's tariff filed with the Department of Public Works of Washington, which rates and charges named in said tariff were limited in their application to intrastate traffic in Washington, and which by their express provision named in said tariff were not applicable to interstate or foreign commerce."

Furthermore, as we have seen, the language of the state Supreme Court itself, in the instant case, showed that it did not intend to hand down a final judgment. Waialua Agricultural Co., Ltd., v. Christian, 52 F.(2d) 847, decided by this court on September 18, 1931.

■ Adverting, next, to the merits of the case, we find ourselves in agreement with the lower court in its views that the shipment in question was intrastate. As was observed by that court, the defendant railroad company's part in the transportation of the logs commenced and terminated wholly within the state of Washington. Though the timber was chiefly of foreign origin, and approximately 90 per cent. of it was towed back to Canada by the mill company's own tugs, these facts did not convert the shipment from Columbia to Bellingham, both in the state of Washington, into an interstate shipment. And it is with this shipment alone that we are concerned.

Section 1, subsec. 1 of the Interstate Commerce Act (49 USCA § 1, subsec. 1) follows in part:

"*Carriers Subject to Regulation.* The provisions of this chapter shall apply to common carriers engaged in—

"(a) The transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment; or

"(b) The transportation of oil or other commodity, except water and except natural or artificial gas, by pipe line, or partly by pipe line and partly by railroad or by water. * * * *"

Subsection 2 (a) of the same section (49 USCA § 1, subsec. 2a) sets forth:

"The provisions of this chapter shall also apply to such transportation of passengers and property * * * but only in so far as such transportation * * * takes place within the United States, but shall not apply—

"(a) To the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property, wholly within one State and not shipped to or from a foreign country from or to any place in the United States as aforesaid."

The use of the word "such" in connection with "transportation" would seem to imply that the transportation which is meant is transportation by common carrier; and the phrase "as aforesaid" similarly indicates that goods "not shipped from a foreign country to the United States" *by a common carrier* would not come under the purview of that chapter. Since subsection 1 deals entirely with defining "common carriers" subject to the provisions of the chapter, it follows that the phrase "as aforesaid" qualifies the "shipping" referred to in subsection 2 as being shipping by common carrier.

■ Accordingly, chapter 1 of the Interstate Commerce Act (49 USCA § 1 et seq.) does not apply to common carrier shipments wholly within one state where the goods have been brought into that state from a foreign country, provided such bringing in is by agencies other than a common carrier. Such a situation is the one with which we are concerned here.

Pursuing this reasoning further, we find that, if the act of Congress excepts such shipments from its provisions, they may be regulated by the state, so far as freight rates are concerned. In the case of Pennsylvania Gas Co. v. Public Service Commission, etc., et al., 252 U. S. 23, 30, 31, 40 S. Ct. 279, 281, 64 L. Ed. 434 the Supreme Court said:

"The rates of gas companies transmitting gas in interstate commerce are not only not regulated by Congress, but the In-

terstate Commerce Act expressly withholds the subject from federal control. Chapter 309, § 7, 36 Stat. 539, 544.

"The thing which the state commission has undertaken to regulate, *while part of an interstate transmission,* is local in its nature, and pertains to the furnishing of natural gas to local consumers within the city of Jamestown in the state of New York. * * *

"This local service is not of that character which requires general and uniform regulation of rates by congressional action, and which has always been held beyond the power of the states although Congress has not legislated upon the subject. While the manner in which the business is conducted is part of interstate commerce, its regulation in the distribution of gas to the local consumers is required in the public interest and has not been attempted under the superior authority of Congress.

"It may be conceded that the local rates may affect the interstate business of the company. But this fact does not prevent the state from making local regulations of a reasonable character. Such regulations are always subject to the exercise of authority by Congress enabling it to exert its superior power under the commerce clause of the Constitution."

In the above case, the Supreme Court, in the language of Mr. Justice Day, who delivered the opinion, had "for consideration the question whether the Public Service Commission of the State of New York has the power to regulate rates at which natural gas shall be furnished by the Pennsylvania Gas Company, plaintiff in error, to consumers in the city of Jamestown in the state of New York. The Court of Appeals of New York (225 N. Y. 397, 122 N. E. 260) held that the Commission had such authority." The judgment of the New York tribunal was affirmed by the Supreme Court of the United States, on the ground that, "until the subject-matter is regulated by congressional action, the exercise of authority conferred by the state upon the Public Service Commission is not violative of the commerce clause of the federal Constitution."

If, as we have seen, Congress did not intend to empower the Interstate Commerce Commission to fix rates upon shipments introduced into this country from a foreign country by other than common carrier agencies, the department of public works of the state of Washington had jurisdiction over a cause involving rates on a shipment wholly within the state, the logs having been brought into the state by a private carrier.

The appellant, however, cites a number of cases decided by the Supreme Court, holding that, even though a given common carrier handles a shipment only within the confines of a certain state, interstate rates may apply. One of those, which the appellant, in its brief, described as "the latest and perhaps the most controlling," is that of United States v. Erie R. Co., 280 U. S. 98, 50 S. Ct. 51, 74 L. Ed. 187. In that case, pulp moved by steamer from a foreign country to Hoboken Dock, N. J. The charges and the purchase price at that point were paid by a broker, who then billed the pulp over the Erie Railroad from Hoboken to Garfield, N. J., purely an intrastate shipment. The Interstate Commerce Commission held that the shipment was in reality an interstate shipment, since it was intended when the vessel left the foreign shores that the goods should be delivered to Garfield. In that case, however, the goods were not introduced into this country by a private carrier, which is the situation that we find in the case at bar.

The appellant cites no case in which a state commission has been found without power to regulate rates on intrastate shipments of goods brought into the state by agencies other than common carriers. The appellant does cite decisions, however, in which it was held that goods brought into a state by private carriers, though transported by common carriers between points wholly within the state, nevertheless were articles of interstate commerce. The Daniel Ball, 10 Wall. (77 U. S.) 557, 19 L. Ed. 999; Champlain Realty Co. v. Town of Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195; Hughes Bros. Timber Co. v. Minnesota, 272 U. S. 469, 47 S. Ct. 170, 71 L. Ed. 359. These cases, however, did not involve either the making or the enforcing of freight rates, and are not controlling in such a case.

As we have seen, the Interstate Commerce Commission has tentatively reported that it does not have jurisdiction in this case. Various state and federal courts which have passed upon this identical case have held the same view.

Assuredly, if there is any serious doubt as to whether the shipment was interstate, this doubt should be resolved in favor of the intrastate character of the transaction: "The intention to interfere with the state function of regulating intrastate rates is not to be presumed. Where there is a serious doubt

whether an order of the Interstate Commerce Commission extends to intrastate rates, the doubt should be resolved in favor of the state power." Arkansas Railroad Commission et al. v. Chicago, Rock Island & Pacific R. Co., 274 U. S. 597, 603, 47 S. Ct. 724, 726, 71 L. Ed. 1224.

The judgment of the lower court is affirmed.