DU BOIS et al. v. CENTRAL R. CO. OF NEW JERSEY et al.

JAGGERS et al. v. SAME.

Nos. 5059, 5058.

District Court, D. New Jersey.

March 1, 1938.

5. Commerce ⊝≈95

Samuel P. Orlando, of Camden, N. J., and H. L. McCormick and Harry S. Elkins, both of Washington, D. C., and Crawford Jamieson, of Trenton, N. J., for complainants.

Alex. H. Elder and William F. Hanlon, both of New York City, for defendants.

FORMAN, District Judge.

These cases arise by virtue of complaints filed by various anthracite coal dealers doing business in Southern New Jersey. Anthracite coal is shipped over various routes and railroads from the Schuylkill, Lehigh, and Wyoming coal mining regions located in Pennsylvania. Briefly stated, some of the carriers follow a more direct route in transporting coal to Southern New Jersey which passes through Camden, New Jersey. The other route is more circuitous and follows a northerly course through Phillipsburg, Elizabethport, and Red Bank in Northern New Jersey, and then takes a southerly course to contact the coal dealers involved in this case. The railroads involved in this circuitous route are the Delaware & Hudson; Delaware, Lackawanna & Western; the Lehigh & New England; and the Central Railroad of New Jersey. Some of the mines are located on the latter railroad, and other mines are located on the three former railroads. The three former railroads, however, do not deliver the coal to the dealers in Southern New Jersey, but deliver it to a junction somewhere in Pennsylvania, at which point either the Central Railroad or the Pennsylvania Railroad takes control of the cargo and then proceeds to make delivery in Southern New Jersey, the latter railroad following a more direct route.

The dealers had been paying a rate of $3.40 a ton on anthracite coal with one exception. On lines of the Delaware & Hudson the rate had been $3.53 for Central delivery. It was complained that these rates were unreasonable and in violation of the following section of the Interstate Commerce Act: "All charges made for any service rendered or to be rendered in the transportation of passengers or property * * * shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful." 49 U.S.C.A. § 1, par. (5). After a hearing, the Commission on August 14, 1931, made a report entitled, Tri-County Coal Dealers' Association et al. v. Atlantic City Railroad Company et al., 178 I.C.C. 213, in which it found certain rates unreasonable to the extent that they exceeded rates of $3.20 a ton, and awarded reparation on shipments made during the statutory period equal to the difference between the rates which had been paid and the rates which were found to be reasonable. The amount of the reparation on shipments that had moved via the direct routes through Camden was promptly agreed upon and paid, but defendants declined to pay the awards on shipments which had moved via the circuitous route through Elizabethport and Red Bank, New Jersey. The Commission thereupon ordered a further hearing solely for the purpose of determining the amount of reparation remaining due, and in a supplemental opinion (203 I.C.C. 673) on August 11, 1934, it announced the following specific awards of reparation, all applicable on

shipments routed via Elizabethport and Red Bank:

| Claimant | Route | Amount |
|---|---|---|
| R. E. Jerrell | CRR[1] | $ 387.32 |
| " " " | DL&W[2]-CRR[3] | 122.15 |
| " " " | D&H[4]-CRR | 653.61 |
| McElroy & Chell | CRR | 95.09 |
| " " " | DL&W-CRR | 74.72 |
| " " " | L&NE[5]-CRR | 2,979.01 |
| " " " | D&H-CRR | 1,295.57 |
| Vineland Lumber Co. | CRR | 288.98 |
| " " " | DL&W-CRR | 39.83 |
| " " " | D&H-CRR | 625.61 |
| | | $6,561.89 |

Those named to receive the above awards are the plaintiffs in one of the instant suits, namely, J. E. DuBois et al. v. Central Railroad et al. (at law No. 5059).

Following the reports and order above referred to, another complaint asking additional reparation on shipments to Wheat Road, Bridgeton, and Vineland, the only destination points herein involved, based upon the decision in the Tri-County Case was filed by certain complainants who had not been parties to the Tri-County Case. This complaint was entitled "Thomas H. Jaggers et al. v. Central Railroad Company of New Jersey et al.," and after due hearing the Commission made a further report, 203 I.C.C. 749, under date of September 4, 1934, in which it made additional awards of reparation aggregating $10,361.-17 based upon the finding that certain rates of $3.40 a ton applicable on prepared sizes of anthracite to said destinations were unreasonable to the extent that they exceeded rates of $3.20 a ton. As the complaint in this suit points out, such part of the awards as accrued on shipments which moved via the direct routes through Camden were paid in full. The following awards, however, based on shipments that moved via the circuitous route through Elizabethport and Red Bank, New Jersey, and were delivered by the Central Railroad Company of New Jersey have not been paid:

| Claimant | Route | Amount |
|---|---|---|
| T. H. Jaggers | CRR | $1,342.44 |
| L. P. Hess | CRR | 551.91 |
| " " " | DL&W-CRR | 264.06 |
| " " " | D&H-CRR | 86.97 |
| Pond Coal Co. | CRR | 838.30 |
| " " " | L&NE-CRR | 131.11 |
| C. J. Woodruff | CRR | 309.53 |
| " " " | DL&W-CRR | 110.03 |
| | | $3,634.35 |

Those named to receive the above awards are the plaintiffs in the other of the instant suits, namely, Thomas H. Jaggers et al. v. Central Railroad Company of New Jersey et al. (at law No. 5058).

Both cases have been consolidated for the purposes of this trial, and a jury has been waived. The sole question presented is the validity of the orders granting reparation in so far as they are founded upon the report of the Interstate Commerce Commission in the Tri-County Case.

At the trial the plaintiffs offered in evidence the reports and the orders for the payment of reparation and thereupon rested. According to the provisions of 49 U.S.C.A. § 16, par. (2), the order determining the fact and amount of damage is prima facie evidence of the facts therein stated.

In rebuttal, the defendants asked for the equivalent of a directed verdict in their favor for the following reasons:

(1) The basic findings contained in the Commission's reports were studiously restricted so as not to include the shipments on which the present claims are based.

(2) The Commission's reports, if construed to cover the shipments on which the present claims are based, are arbitrary, and therefore void, because not supported by "basic and essential" findings.

(3) Said reports, if construed to cover the shipments on which the present claims are based, are arbitrary, and therefore void, because wholly unsupported by evidence; and

(4) Any value as prima facie evidence which the Commission's reports and orders may have had originally is rebutted by the Commission's subsequent findings respecting the same group of rates in the case of Atlantic City Coal Dealers Credit Bureau v. Atlantic City R. R. Co. et al., 203 I.C.C. 470; Id., 209 I.C.C. 737.

The following statute sets forth the requirement that the Interstate Commerce Commission when making a rate investigation shall state the findings upon which its conclusion is based: "Whenever an investigation shall be made by said commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the commission, together with its decision, order, or requirement in the premises; and in case damages are

---

1 Central Railroad
2 Delaware, Lackawanna & Western Railroad
3 Central Railroad delivery
4 Delaware & Hudson Railroad
5 Lehigh & New England Railroad

awarded such report shall include the findings of fact on which the award is made." 49 U.S.C.A. § 14, par. (1).

In Beaumont, S. L. & W. Ry. Co. v. U. S., 282 U.S. 74, 86, 51 S.Ct. 1, 6, 75 L.Ed. 221, the court made the following comment: "Complete statements by the Commission showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions in cases analogous to this. Wichita R. R. v. Public Utilities Commission, 260 U.S. 48, 58, 43 S.Ct. 51, 67 L.Ed. 124. And we have recently emphasized the duty of such courts fully to state the grounds upon which they act. Virginian Ry. v. United States, 272 U.S. 658, 675, 47 S.Ct. 222, 71 L.Ed. 463; Lawrence v. St. Louis-San Francisco Ry., 274 U.S. 588, 591, 592, 47 S. Ct. 720, 71 L.Ed. 1219; Arkansas Commission v. Chicago, R. I. & P. R. Co., 274 U.S. 597, 603, 47 S.Ct. 724, 71 L.Ed. 1224; Hammond v. Schappi Bus Line, 275 U.S. 164, 171, 48 S.Ct. 66, 72 L.Ed. 218; Cleveland, C., C. & St. L. Ry. v. United States, 275 U.S. 404, 414, 48 S.Ct. 189, 72 L.Ed 338; Baltimore & Ohio R. Co. v. United States, 279 U.S. 781, 787, 49 S.Ct. 492, 73 L.Ed. 954."

The Commission's failure to make adequate findings of fact was again held to render its order void in U. S. v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 55 S. Ct. 462, 79 L.Ed. 1023. In this case the Commission wrote a long and discursive report, concluding with a statement that the proposed rates which the Commission disapproved would be unreasonable and in violation of section 1(5), which denounces unreasonable charges. Nevertheless, the court in an opinion by Mr. Justice Cardozo held the order void for lack of adequate findings, because:

"This court has held that an order of the Interstate Commerce Commission is void unless supported by findings of the basic or quasi-jurisdictional facts conditioning its power. Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291; United States v. Baltimore & Ohio R. Co. (January 7, 1935), 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587." 294 U.S. 499, 504, 55 S.Ct. 462, 465, 79 L.Ed. 1023.

"The statement in the second of these paragraphs that the proposed rates would be 'unreasonable' must be read in the light of the report as a whole, and then appears as a conclusion insufficient as a finding unless supported by facts more particularly stated." 294 U.S. 499, 506, 55 S.Ct. 462, 465, 79 L.Ed. 1023.

The case of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291, sheds further light upon the requirement that the Commission make appropriate findings. The court made the following observation: "The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the Commission's determination, to the importance of which this court has recently adverted (The Beaumont, Sour Lake & Western Railway Company v. United States, 282 U.S., p. 74, 51 S.Ct. 1, 75 L.Ed. 221), but of the lack of the basic or essential findings required to support the Commission's order. In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. *The Commission is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported.*" 282 U.S. 194, 215, 51 S.Ct. 119, 125, 75 L.Ed. 291. (Italics supplied.)

Accordingly, it appears that the first inquiry to be determined is whether or not the report of the Commission is supported by findings of fact. Those established by the Commission will be discussed as they apply to the railroads in the following order: (1) Central Railroad; (2) Delaware & Hudson Railroad; (3) Delaware, Lackawanna & Western Railroad; and (4) Lehigh & New England Railroad.

The court is unable to agree with defendants in their assertion that there are no findings applicable to the Central Railroad. The Commission stated that the "Wyoming region * * * is served by defendants, * * * and Central Railroad of New Jersey, the latter carrier hereinafter referred to as the Jersey Central" (Tri-County Coal Dealers' Ass'n v. Atlantic City R. Co., 178 I.C.C. 213, 214); that Wheat Road is served by the Jersey Central; and that Vineland and Bridgeton are served by the Jersey Central and West Jersey. 178 I.C.C. 213, at page 215. The following language leaves the court without a doubt that the circuitous route followed by the Central Railroad was considered: "From mines in the Wyoming and Lehigh regions served by the Jersey Central, shipments move lo-

cally over the lines of that carrier via Elizabethport and Red Bank, N. J., to Vineland, Bridgeton, and Wheat Road." 178 I. C.C. 213, at page 215.

The report further states that the "total tonnage moved over the Jersey Central to Wheat Road, Vineland, and Bridgeton in 1927 was 22,384 gross tons." 178 I.C.C. 213, at page 215. Included within its report there is a table compiled from exhibits of record showing the rates assailed on prepared sizes of coal to representative destinations and earnings thereunder compared with rates and earnings from the same regions to other points in New Jersey and in Pennsylvania. 178 I.C.C. 213, at page 216. This table gives the average distance, rate, and ton-mile earnings from the Wyoming, Lehigh, and Schuylkill regions to various destinations including Bridgeton, Vineland, and Wheat Road. The average distance, rate, and ton-mile earnings from the three coal regions to Bridgeton, Vineland, and Wheat Road are tabulated as they apply to these points from mines located on the Pennsylvania Railroad, Central Railroad, Lehigh Valley, and over the Central Railroad of New Jersey single-line movement. The report also indicates that operating conditions with respect to the destination territory served by the Jersey Central are favorable. 178 I.C.C. 213, at page 221. After reciting these findings the Commission proceeded to fix a reasonable rate. In view of these facts it is impossible for this court to hold that the Commission made no findings with respect to traffic moving over the Central Railroad of New Jersey.

The question of the sufficiency of the findings affecting the Delaware & Hudson, Delaware, Lackawanna & Western, and Lehigh & New England Railroads may be disposed of concurrently. These carriers connect either with the Central Railroad which makes delivery or with another railroad which makes delivery, but which follows the direct route to Southern New Jersey. As already indicated, rates to the various destinations were $3.40 a ton excepting transportation over the Delaware & Hudson and connecting carriers which was $3.53 a ton. *No mention of this variation, however, is to be found in the report.* On page 214 of 178 I.C.C. it is recited that the Wyoming Region is served by the Delaware, Lackawanna & Western and the Delaware & Hudson, and that the Lehigh Region is served by the Lehigh & New England Railroad. The next paragraph states generally what the rates are from the Wyoming, Schuylkill, and Lehigh Regions to the various destinations under consideration, without specifically naming these three railroads.

On page 215 of 178 I.C.C. the report contains a paragraph which purports to name the specific routes involved. The only routes mentioned applying from mines located on the Delaware & Hudson, the Delaware, Lackawanna & Western, and the Lehigh & New England are as follows: "From mines in the Wyoming region served by the Delaware & Hudson, and the Delaware, Lackawanna & Western to West Jersey destinations shipments move via Wilkes-Barre, Pa., *thence the Pennsylvania and West Jersey,* and from mines served by the Lehigh & New England, via Martins Creek, Pa., *and the Pennsylvania and West Jersey.* To points on the West Jersey, shipments from the Wyoming region also move over the Jersey Central or the Lehigh Valley to Phillipsburg, N. J., *thence the Pennsylvania and West Jersey.*" (Italics supplied.)

No mention is made at any place in the Commission's reports that any route exists from Delaware & Hudson, Delaware, Lackawanna & Western, or Lehigh & New England mines via the circuitous route of the Jersey Central through Elizabethport and Red Bank to points in Southern New Jersey. On the contrary, the excerpt just cited indicates that coal moving from mines on these three railroads follows the direct route to Southern New Jersey. Even the table to which we have hereinbefore alluded, giving the average distance, rate, and ton-mile earnings from the three coal regions to the various destinations, fails to mention the three railroads now being considered.

Therefore, the court is of the opinion that the Commission did not make proper findings in respect to mines located on the Delaware & Hudson, Delaware, Lackawanna & Western, and the Lehigh & New England Railroads, and that its order for reparation in so far as it applies to shipments of coal conveyed by these railroads is void.

The defendants contend that if the report and order of the Commission is supported by basic findings of fact, it is still void because such findings are not supported by the evidence. This, then, brings us to

a consideration of the evidence in so far as it might support the findings in the report and order of the Commission as it applies to the Central Railroad. An examination of Exhibit No. 3, page 17, which was before the Commission, discloses a table showing "distance from mines located on Central Railroad of New Jersey to points in State of New Jersey located on Central Railroad of New Jersey." The points referred to are Wheat Road, Vineland, and Bridgeton. On the same page the earnings' of this railroad to the same points are listed. On page 138 of the record taken before the Commission, Witness Walters made the following reference to Exhibit Number 23, which was put in evidence before the Commission: "This exhibit shows the present rates on all sizes of anthracite from the mines on the Central Railroad of New Jersey to Wheat Road, Vineland and Bridgeton, N. J., these being the only points of destination of the Central Railroad of New Jersey which were attacked by the complainants. The statement also shows the average distances from the Lehigh and Wyoming regions to destinations, and the rates per ton per mile based on those average distances."

Exhibit No. 25 before the Commission shows the tonnage in gross tons shipped during the year 1927 from the Lehigh and Wyoming Regions, from mines located on the Central Railroad of New Jersey, and connecting carriers destined to Wheat Road, Vineland, and Bridgeton. Exhibit No. 26 is an amplification of Exhibit No. 25, and also indicates the tonnage and gross tonnage shipped during 1927 from the Wyoming and Lehigh Region Mines located on the Central Railroad of New Jersey and connecting carriers.

Exhibit No. 30 is a chart prepared by the Central Railroad entitled and showing its "Freight Traffic Density For Average Day During March, 1923."

These references are sufficient to convince the court that the Commission had evidence before it upon which it could justifiably arrive at its conclusion in so far as it affects the Central Railroad.

There remains but one further contention, and that is defendant's argument that the prima facie case established by plaintiff upon the introduction of the reports and orders of the Interstate Commerce Commission is rebutted by a decision of the Interstate Commerce Commission entitled Atlantic City Coal Dealers Credit Bureau v. Atlantic City R. R. Co. et al., 203 I.C.C. 470; Id., 209 I.C.C. 737. This contention will likewise be considered only in so far as it affects the reports and order of the Commission as applied to the Central Railroad. In the case just cited the Commission was dealing with rates on the transporta-. tion of coal from the same regions of Pennsylvania, but the destination was Atlantic City, and not Vineland, Wheat Road, and Bridgeton. The Commission originally found a rate of $3.65 unreasonable to the extent that it exceeded a rate of $3.20 a ton, and awarded reparation on shipments that had moved from the Lehigh and Wyoming regions to Atlantic City after July 18, 1930. On reargument the Commission reversed its decision and found that a rate of $3.65 was not unreasonable in the past and that a rate of $3.40 would be reasonable for application on shipments made in the future. The argument is made that the mileage to Bridgeton, Vineland, and Wheat Road is practically the same as to Atlantic City, and since no reparation was allowed for the past, no reparation should be allowed in the instant case.

■■ · The following statute gives the reports and orders of the Commission a prima facie presumption:

"*Proceedings in courts to enforce orders;* * * * If a carrier does not comply with an order for the payment of money within the time limit in such order, complainant * * * may file * * * a petition setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit * * * shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated." 49 U.S.C.A. § 16, par. (2).

The statute apparently gives only the order determining the amount of damages a prima facie presumption. There is no dispute about the amount of damages herein. The only dispute in this case concerns the validity of the findings of the Commission determining that rates on coal transported to Wheat Road, Vineland, and Bridgeton are unreasonable. That finding has been upheld in so far as it applies to traffic over the Central Railroad. The Atlantic City Case, supra, could be more appropriately used to rebut the finding that the rates in the past to Wheat Road, Vineland and Bridgeton were unreasonable.

But whether rates to Atlantic City should be put on a parity with rates to Wheat Road, Vineland, and Bridgeton is a question which should be presented to the Interstate Commerce Commission. This court does not feel at liberty to hold that the former rates to these three destinations were reasonable, because the Commission in a later case held that even higher rates to Atlantic City were reasonable.

To summarize, we have the ultimate finding of the Commission as follows:

"We find that the rates assailed on prepared sizes were, are, and for the future will be unreasonable to the extent that they exceeded, exceed, or may exceed the following, in amounts per ton of 2,240 pounds:" (sic)

| To | From Wyoming Region | From Lehigh Region | From Schuylkill Region |
|---|---|---|---|
| Bridgeton, N. J. | $3.20 | $3.20 | $3.08 |
| Vineland, N. J. | 3.20 | 3.20 | 3.08 |
| Wheat Road, N. J. | 3.20 | 3.20 | 3.08 |

We must look for basic findings supported by evidence as foundation for this ultimate finding. We have shown such in connection with the Central Railroad of New Jersey, but the entire report is barren of any findings concerning the Delaware & Hudson, the Delaware, Lackawanna & Western, and the Lehigh & New England rates, or the conditions under which these railroads operated. Certainly, there is not even the remotest reference to the rate of $3.53 over the Delaware & Hudson Railroad. An inference may be drawn from the report and the ultimate finding above quoted that the rate of $3.20 was to apply on all routes, but where is there any basic finding to support so broad an interpretation of the ultimate finding? It is a fact that the Commission adverts in its report to the gross tonnage over the Central Railroad as follows: "The total tonnage moved over the Jersey Central to Wheat Road, Vineland, and Bridgeton in 1927, was 22,384 gross tons." It is also a fact that Exhibit No. 25 before the Commission indicates that this gross tonnage included shipments from the mines on the Lehigh & New England, Delaware & Hudson, and Delaware, Lackawanna & Western Railroads. But this in itself does not support an adjudication by the Commission as to the reasonableness of the rates. Again, in its second report the Commission states: "The shipments originated at points in the Wyoming, Lehigh, and Schuylkill regions and moved over various single-line and joint-line routes of the Central Railroad Company of New Jersey, the Delaware, Lackawanna and Western Railroad Company, the Delaware and Hudson Company, and the Lehigh and New England Railroad Company." Tri-County Coal Dealers' Ass'n v. Atlantic City R. Co., 203 I.C.C. 673, 674. Again, this statement is isolated of necessary support.

It is, therefore, with reluctance that we conclude that if the Commission intended that the rate in its ultimate table should include all routes from the Wyoming, Lehigh, and Schuylkill Regions to Bridgeton, Vineland, and Wheat Road, it has failed to so report its consideration of evidence or its findings to that effect.

In so far as recovery of reparation for excessive charges for coal transported over the roads of the Delaware and Hudson, Delaware, Lackawanna and Western, and Lehigh and New England is sought, the plaintiffs in these suits have no cause for action.

In the Du Bois suit (Law No. 5059) judgment will be entered in favor of the plaintiffs as follows:

| Claimant | Route | Amount |
|---|---|---|
| R. E. Jerrell | CRR | $387.32 |
| McElroy & Cheli | CRR | 95.09 |
| Vineland Lumber Co. | CRR | 288.98 |
| | | $771.39 |

In the Jaggers suit (Law No. 5058) judgment will be entered in favor of the plaintiffs as follows:

| Claimant | Route | Amount |
|---|---|---|
| T. H. Jaggers | CRR | $1,342.44 |
| L. P. Hess | CRR | 551.91 |
| Pond Coal Co. | CRR | 838.30 |
| G. J. Woodruff | CRR | 309.03 |
| | | $3,041.68 |

Such judgments carry interest from the date the payments were made, and costs, including a reasonable attorney's fee as provided by statute.