MISSOURI PACIFIC RAILROAD CORPORATION, APPELLANT, V.
NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.

FILED JULY 26, 1927. NO. 24463.

State Railway Commission: FINDINGS: REVIEW. Ordinarily, this court will not interfere with findings of fact of the state railway commission when it has jurisdiction and there is sufficient evidence before it to sustain its findings.

APPEAL from the Nebraska State Railway Commission. *Affirmed.*

*J. A. C. Kennedy* and *Charles F. McLaughlin,* for appellant.

*O. S. Spillman, Attorney General,* and *Hugh La Master, contra.*

*Brogan, Ellick & Raymond,* for interveners.

*Trenmore Cone, amicus curiæ.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

This is a proceeding which had its beginning in the Nebraska state railway commission wherein the Missouri Pacific Railroad Corporation in Nebraska made an application to the commission as to whether a certain order complained of should be upheld or rescinded requiring the corporation to open its team tracks to the use of other companies on its belt line in Omaha. E. P. Boyer Lumber & Coal Company and 14 wholesale business concerns and corporations doing business in Omaha severally joined the plaintiff railroad company in a petition of intervention. From an adverse ruling by the commission, the railroad corporation has appealed.

In this action the corporation states the issues in its brief, from its viewpoint, in this language:

"The question involved in this appeal is whether or not the order of the Nebraska state railway commission requiring the Missouri Pacific Railroad Corporation in Nebraska to open its team tracks on what is known as the 'Belt Line' in the city of Omaha to the public should be upheld, or, in other words, whether the order of the Nebraska state railway commission should be sustained whereby the Missouri Pacific Railroad Corporation in Nebraska is required to switch cars that have arrived in Omaha in the course of intrastate railroad transportation upon a railroad other than the Missouri Pacific to a team track owned by the Missouri Pacific Railroad Corporation in Nebraska, for a switching charge."

The argument on which the corporation relies for a reversal of the order is that the railway commission should have sustained a certain order of May 2, 1923, wherein the commission held that team tracks of the corporation are for its sole use and that switching service from and to such tracks should not be performed for connecting carriers. And this, it is argued, is on the ground that the team tracks of the corporation are its private property, and, besides, it is argued that it is the uniform custom of carriers to use team tracks for handling the business of their own lines exclusively. It is further argued that to compel the railroad company to place upon its team tracks cars arriving in Omaha on foreign lines, and upon which cars the Missouri Pacific has not had the line haul, is a discrimination in favor of other common carriers. And it is also contended that to compel the railroad company to allow foreign line cars to be placed on its team tracks would result in congestion upon its belt line and impair its ability to properly handle its own business on the belt line. And, besides, the argument continues, there is no provision in the charter of the belt line company which requires the opening of the team tracks to the public or to switch cars from other roads to its team tracks for a switching charge. It is also urged that public interest is not concerned in the application for the revocation of the order of the railway commission of May 2, 1923, nor is there any demand by the public for such revocation.

On the part of the railway commission, and Trenmore Cone, intervener and *amicus curiæ*, the argument in substance is that on May 2, 1923, the railway commission approved an application filed by the corporation to publish the following item in its freight tariff, namely:

"Team tracks of the Missouri Pacific Railroad Corporation in Nebraska are for its sole use, and switching service from or to such tracks will not be performed for connecting railroads."

The order also contained the following condition:

"It should be understood that this conclusion is with-

out prejudice to any cause of action which may hereafter arise concerning the reasonableness of this or any similar tariff ruling."

· But on September 27, 1923, the railway commission entered the following order:

"Whereas, on the second day of May, 1923, this commission issued an order, effective upon thirty days' notice, authorizing the Missouri Pacific Railroad Corporation in Nebraska to publish a new and additional item in its freight tariff, Nebraska No. 7, said item reading as follows:

" 'Team tracks of the Missouri Pacific Railroad Corporation in Nebraska are for· its sole use, and switching service from or to such tracks will not be performed for connecting railroads;' and

"Whereas, order of approval was issued upon *ex parte* showing of said Missouri Pacific Railroad Corporation in Nebraska and upon condition that it was without prejudice to any cause of action which might arise concerning the unreasonableness of this or any similar tariff ruling; and

."Whereas, complaint has been lodged with this commission as to the unreasonableness of said rule, and it appearing to the commission that good and sufficient cause exists for further investigation into the propriety and reasonableness of said rule:

"Therefore, be it resolved, that the said Missouri Pacific Railroad Corporation in Nebraska be, and it hereby is, ordered to appear in the office of the commission at Lincoln, Nebraska, at 10 o'clock a. m., on the 23d day of October, 1923, to show cause why such order should not be revoked or modified, and that due notice of such hearing be given to all interested parties."

The corporation argues that the belt line congestion is so great that its facilities are not sufficient to properly perform the required services. From this it appears that it was its duty to enlarge the facilities. Complaint is made that the switching rates are not compensatory, but the commission points out that no application was made for an order to fix compensatory rates. And the commission

directs our attention to the fact that the corporation's predecessor operated the belt line for about 40 years without a complaint. This, of course, is not of itself conclusive. But the commission explicitly held that there is not sufficient ground to support the plea of inadequacy of compensation. The argument is that the legislature is the body to whom application should be made for such relief, if any, as the corporation may be entitled to in the premises.

We think the question before us turns on the question of the power of the railway commission, and it appears to us that the railway commission acted within its powers and that the remedy of the railway corporation lies with the legislature.

It may be observed that a dealer had 50 cars of sand and gravel for delivery at one of the corporation's team tracks in Omaha, and he testified that he was informed that the corporation had some "new rules" in effect that very day and that there would be no more team track deliveries unless the dealer would pay the new switching charge of $6.30 a car. This, he testified, was a prohibitive rate on this class of shipment. The result was that he lost about thirty customers and retained only four. The "new rules" put this shipper out of business without fault on his part. The same situation prevails in respect of hay, grain, and other shipments.

There is evidence tending to prove that out of 39,781 cars that were "switched" in 1922, only 1,375 of these were from other roads and they were set out at team tracks at the rate of only 4 cars a day. The commission granted a rehearing upon application of the corporation and at this hearing it was shown that during the periods of the heaviest freight movement the largest number of cars handled in August, June, July, and September, each day was, in the average of the respective months, 12½ plus, 5 plus, 7 plus, and 9 plus, and this calculation was based on 26 working days to the month.

In *Grand Trunk R. Co. v. Michigan Railway Commission,* 231 U. S. 457, the court said that the judiciary will only

interfere with a state railway commission when it appears that it has clearly transcended its powers. And in the same case this appears: "Transportation is the business of railroads and when, and to what extent, that business may be regulated so depends upon circumstances that no inflexible rule can be laid down"—citing *Wisconsin R. Co. v. Jacobson*, 179 U. S. 287.

"This court cannot substitute its judgment for that of the interstate commerce commission upon matters of fact within the province of the commission." *Los Angeles Switching Case*, 234 U. S. 294.

Ordinarily, this court will not interfere with findings of fact of the state railway commission when it has jurisdiction and there is sufficient evidence before it to sustain its findings.

Reversible error does not appear in the record. It follows that the findings and order of the state railway commission must be, and they are hereby, approved.

AFFIRMED.