## MISSOURI PAC. R. R. CORPORATION IN NEBRASKA v. NEBRASKA STATE RY. COMMISSION et al.

### No. 9464.

Circuit Court of Appeals, Eighth Circuit.

May 10, 1933.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy and G. L. DeLacy, both of Omaha, Neb., on the brief), for appellant.

Hugh LaMaster, Asst. Atty. Gen., of Nebraska (C. A. Sorensen, Atty. Gen., of Nebraska, on the brief), for appellees.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree which dismissed a bill which sought to enjoin the enforcement of an order made by the Nebraska State Railway Commission.

The order of the commission, dated February 23, 1924, contained the following:

"The Commission is, therefore, of the opinion that the rule applied for by the Company, and hitherto approved by this Commission, is not reasonable under all the circumstances and that previous status should be restored.

"It is therefore ordered that the order made by this Commission in Application No. 5083, be and the same hereby is revoked and rescinded and the new and additional item in its freight tariff, Nebraska No. 7, reading as follows:

" 'Team tracks of the Missouri Pacific Railroad Corporation in Nebraska are for its sole use and switching service from or to such tracks will not be performed for connecting railroads.' be and the same hereby is ordered cancelled, effective April 1, 1924."

It is conceded that this order related solely to intrastate business on the tracks involved.

The salient facts leading up to the order are substantially as follows: In 1883 the Omaha Belt Railway Company was incorporated and organized under the laws of the state of Nebraska. Its certificate of association filed with the secretary of state of Nebraska on September 10, 1883, contained the following:

"The undersigned hereby certify that we have associated ourselves together for the purpose of constructing and operating a railroad.  *  *  *.

"The termini of said railroad shall both be in the city of Omaha, Douglas County, State of Nebraska. [Then follows a description of the route]. With branch lines therefrom to any point or points in Douglas County, Nebraska, deemed necessary—and especially to any Railway Depot and to any warehouse—shop—manufactory or public place in the said city of Omaha—on such practicable route or routes as may be deemed advisable and hereafter determined upon.

"Said Railway in a general way to form a circular or belt line around the business portion of said city of Omaha with branches therefrom as may be deemed convenient and necessary."

Its articles of incorporation which were filed with the secretary of state of Nebraska September 11, 1883, contained the following:

"Article I.

"The name of said corporation shall be the Omaha Belt Railway Company, and the principal place of transacting its business

shall be the City of Omaha, Douglas County and State of Nebraska.

"Article II.

"The nature of the business to be transacted by said corporation shall be the construction, maintaining and operation of a railroad or railroads in Douglas County, State of Nebraska."

The company built the line of railway and it was operated either by the belt company or by the Missouri Pacific Railway Company until 1910, when it was purchased by the Missouri Pacific Railway Company.

The deed of conveyance contained the following clause:

" *  *  *  The Grantor, in consideration of the premises, and of the assumption by the Grantee of all the obligations, liabilities and indebtedness of the Grantor, whether arising from contract or otherwise, and for an additional consideration of one hundred dollars ($100), the receipt of which by the Grantor is hereby acknowledged, and for other good and valuable consideration, the receipt of which by the Grantor is also hereby acknowledged, has granted, bargained, sold, assigned, transferred and conveyed, and by these presents doth grant, bargain, sell, assign, transfer and convey unto the Grantee, its successors and assigns forever, the whole and every part of the Grantor's line of railroad and branches, constructed or to be constructed, together with all the real estate and other assets and property, real, personal or mixed, rights, privileges, franchises, powers and immunities of the Grantor, and all interests therein  *  *  *  and also all franchises of the Grantor for the maintenance and operation of said line of railroad and branches or otherwise pertaining thereto, or in connection therewith."

About 1915, through a receivership proceeding, the appellant, Missouri Pacific Railroad Corporation, acquired the property together with other properties theretofore belonging to the Missouri Pacific Railway Company.

Up to the year 1923, the belt line company was operated as a switching company. In consideration of certain charges, cars were received from other railroad lines entering Omaha and transferred to team tracks connected with the belt line. The cars so handled by the belt line included both those coming in interstate and those coming in intrastate traffic, up to 1911; and since that time has included cars in intrastate traffic only. The

charges for handling intrastate cars were contained in tariffs on file with the Nebraska State Railway Commission. As illustrative of this practice, the freight tariff of local switching rates issued July 24, 1922, contained on its front page the following:

"Missouri Pacific Railroad Corporation in Nebraska Freight Tariff
—Of—
Local Switching Rates
—Also—
Absorption of Connecting Lines' Switching Charges, etc. Neb. No. 7
. Cancels Mo. Pac. No. 1973-B.
—On—
Classes and Commodities
(Applies only on Nebraska State Traffic)
—Between—
Connections of
—And—
Side Tracks of the Missouri Pacific Railroad in Nebraska
—At—
Omaha and South Omaha, Neb.

\* \* \* \* \*

"Issued July 24, 1922 Effective August 31, 1922. On Interstate Traffic, will not apply.

"Except as noted, no change in rates; reissued to show specific rates as reduced July 1, 1922, in compliance with Nebraska State Railway Commission Order in Application No. 4838, dated June 22, 1922.

Issued by
D. R. Lincoln
Assistant Freight
Traffic Manager,
St. Louis, Mo."

And on one of the following pages the following:

"Non-Application on Interstate Traffic.

"Rates shown herein will apply only on traffic that has both origin and destination within the State of Nebraska.

"For rates on Interstate traffic, see Tariff No. Neb. 4-B, I. C. C. No. 6, supplements thereto and reissues thereof."

In 1923 the appellant company inaugurated a proceeding before the Nebraska State Railway Commission to amend the tariff No. 7, above mentioned, by inserting therein the following: "Team tracks of the Missouri Pacific Railroad Corporation in Nebraska are for its sole use, and switching service from or to such tracks will not be performed for connecting railroads."

By an order dated May 2, 1923, the commission amended the tariff as requested. The order contained the following: "While it is true, as stated by applicant, that the proposed rule is in harmony with the rule generally observed by other lines at Omaha and at other stations in Nebraska, and the authority requested herein will be granted; it should be understood that this conclusion is without prejudice to any cause of action which may hereafter arise concerning the reasonableness of this or any similar tariff ruling."

In September, 1923, a proceeding was inaugurated before the State Railway Commission by one Trenmore Cone seeking to have the amendment canceled. The railroad company answered, opposing the cancellation and setting up various defenses, among them that to compel the railroad company to switch cars for a switching charge from connecting lines to the railroad company's team tracks would violate articles 5 and 14 of the Amendments to the Constitution of the United States; but the railroad company did not specifically allege "that the reason why such action would take plaintiff's property without due process of law and would deny plaintiff the equal protection of the laws was because such action would be in violation of the Commerce Clause of the Federal Constitution (article 1, § 8, cl. 3) and the Transportation Act of 1920 (41 Stat. 456); and plaintiff did not specifically allege in said answer that Congress by the Transportation Act of 1920 had entered the field of team track regulation to the exclusion of the several states, and that under said Transportation Act one carrier could be compelled to turn over its team tracks to the use of another carrier only when the Interstate Commerce Commission found that such action would be in the public interest and practicable without substantially impairing the ability of the carrier owning the terminal facilities to handle its own business."

A hearing was had and on February 23, 1924, the commission entered the order now in controversy canceling the amendment to the tariff.

On appeal by the railroad company to the Supreme Court of Nebraska, that court affirmed the order of the commission.

On writ of error to the Supreme Court of the United States, that court in November, 1928, dismissed the case.

In October, 1929, the bill in the present case was filed in the United States District Court for the District of Nebraska. That

court, after a trial, dismissed the bill on the ground that by reason of the litigation above mentioned, the matters involved had become res judicata; and that there had been no substantial change in the situation.

The present appeal followed.

Is There a Justiciable Question Involved

■ The first matter which challenges our attention is the contention of appellees that the case presents no justiciable question. This contention was apparently not made in the trial court. It is based upon the assumption that the plaintiff railroad company is seeking the establishment of a new tariff and upon the postulate that in cases of this character, administrative action is prerequisite to judicial action.

Preliminary to a determination of this contention of appellees, there should be a consideration of the question what body had jurisdiction to control the making or changing of a tariff applicable to the situation disclosed.

If, as appellees contend, the Nebraska State Railway Commission had such jurisdiction, then we think the present case does present a justiciable question; and for the following reason: the appellant railroad company applied to the Nebraska State Railway Commission for an amendment to the existing tariff which purported to be applicable to the situation. That commission granted the amendment. Later, on application of a shipper, the commission revoked and canceled its order amending the tariff. This cancellation order was affirmed by the Supreme Court of Nebraska and an appeal to the United States Supreme Court was dismissed.

We think this procedure showed sufficient prior action by an administrative body, the Nebraska State Railway Commission.

It is true that the railroad company, prior to the commencement of the present suit, might have made another application to said commission; but we think that this would have been merely a futile gesture. Accordingly, our conclusion is that if the Nebraska State Railway Commission had jurisdiction over the subject-matter, there is a justiciable question involved in the present suit.

Appellant contends that exclusive jurisdiction over rates and regulations touching the tracks involved is vested in the Interstate Commerce Commission; and appellant points to section 3, paragraph 4, of the Interstate Commerce Act as amended (49 US CA § 3 (4), as supporting its contention.

Appellant further contends that by the passage of the Transportation Act of 1920, Congress entered the field of controlling the facilities in question; and that, absent regulations by the Interstate Commerce Commission, the control of such facilities rests with the railroad company which owns the facilities.

Appellant further contends that there was no occasion for it to resort to the Interstate Commerce Commission for administrative action before commencing the present suit, because the railroad company was not asking for any action by that body, but was simply seeking to exercise a common-law right belonging to the railroad company, and by the present suit was asking that defendants be enjoined from interfering with the exercise of that right by the railroad company.

These several contentions of the railroad company involve a number of assumptions which we think cannot be taken as true without qualifications:

The first assumption, relating to jurisdiction of the Interstate Commerce Commission, is that section 3, paragraph 4, of the Interstate Commerce Act (as amended) contains the controlling provisions of the act which have a bearing on the situation. We think that section 1, paragraph 22, as amended (49 USCA § 1 (22), must also be considered. These paragraphs, so far as here material, are set forth in the margin.[1]

■ Read together, they show quite clearly that Congress intended that jurisdiction over the field of railroad services to the public should be in part under the control of the Interstate Commerce Commission and in part under the control of the states, each in its own sphere and by co-operative action. This view finds support in Board of R. R.

[1] "Section 1. * * * (22) The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation.

"§ 3. * * * (4) If the commission finds it to be in the public interest and to be practicable, without substantially impairing the ability of a carrier owning or entitled to the enjoyment of terminal facilities to handle its own business, it shall have power to require the use of any such terminal facilities, including main line track or tracks for a reasonable distance outside of such terminal, of any carrier, by another carrier or other carriers, on such terms and for such compensation as the carriers affected may agree upon, or, in the event of a failure to agree, as the commission may fix as just and reasonable for the use so required, to be ascertained on the principle controlling compensation in condemnation proceedings."

Commissioners v. Great Northern Railway Co., 281 U. S. 412, 429, 50 S. Ct. 391, 74 L. Ed. 936.

The second assumption, as to the necessity of administrative action, is that inaction by the Interstate Commerce Commission under section 3, paragraph 4, necessarily means that the railroad is free from control in respect to the facilities in question. Such inaction, however, might mean that the Interstate Commerce Commission recognized that control over the matter could at the proper time be reasonably apportioned between federal and state authorities by co-operative action.

The third assumption, also relating to the necessity of administrative action, is that in the case at bar the railroad company was simply asserting and trying to exercise a well-established, unqualified, common-law right. As to this last assumption, see Grand Trunk Railway Co. v. Mich. Railway Comm., 231 U. S. 457, 34 S. Ct. 152, 58 L. Ed. 310, and Chicago & N. W. R. Co. v. Ochs, 249 U. S. 416, 39 S. Ct. 343, 63 L. Ed. 679, as apparently casting doubt upon the right asserted being an unqualified one.

Neither the second nor the third of these assumptions can, in our judgment, be taken as true without qualification and beyond dispute. Involved in their consideration are questions of fact relating to railroad and economic policy, questions of fact relating to interference vel non of intrastate with interstate commerce, and questions of fact relating to the surrounding circumstances of the particular case at bar.

All of these questions are, in our judgment, peculiarly for investigation and determination by the Interstate Commerce Commission.

We conclude, therefore, that if the Interstate Commerce Commission has jurisdiction of the subject-matter, no justiciable question is presented by the case at bar, because there has been no prior administrative action by the Interstate Commerce Commission. See as to practice, Transit Commission v. United States, 53 S. Ct. 536, 77 L. Ed. ——, opinion filed April 10, 1933.; Arkansas Railroad Comm. v. Chicago, etc., Railroad Co., 274 U. S. 597, 47 S. Ct. 724, 71 L. Ed. 1224.

### Jurisdiction of the Nebraska State Railway Commission

The question as now presented of the jurisdiction of the Nebraska State Railway Commission to regulate the use and charges

therefor of the tracks in question was not raised by the railroad company until after the controversy was carried by writ of error to the Supreme Court of the United States and there disposed of by dismissal of the writ.

The trial court in the case at bar, inferentially, at least, held that the State Railway Commission had jurisdiction of the controversy; and although the question may not be free from doubt, we are led to the same conclusion that the State Railway Commission did have jurisdiction.

We are led to this conclusion: (1) By a reading and comparison of section 3, paragraph 4, and section 1, paragraph 22, of the Interstate Commerce Act, as amended; (2) by the fact that the Interstate Commerce Commission has taken no steps under said section 3, paragraph 4, to regulate the use in intrastate commerce of the tracks in controversy, although said paragraph has been in existence since 1920, and during said period the State Railway Commission has been exercising jurisdiction in regard to the matter; and (3) by the reluctance of the courts to adjudge power in the Interstate Commerce Commission to enter the field of intrastate traffic and regulate the same in the absence of a hearing before that body, unless the bestowal of such power upon the Interstate Commerce Commission is made by clear language of the statute, and unless the facts and circumstances clearly warrant the exercise of the power. Such, we think, has been the attitude of the courts both before and since the passage of the Transportation Act of 1920. Atchison, T. & S. F. Railway Company v. Railroad Commission of California, 283 U. S. 380, 51 S. Ct. 553, 75 L. Ed. 1128; Western & Atlantic Railroad v. Georgia Public Service Commission, 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753; St. Louis S. W. Ry. Co. v. Missouri Pacific Railroad Company, 53 S. Ct. 516, 77 L. Ed. ——, opinion filed March 27, 1933, decided since the passage of the Transportation Act; and Grand Trunk Railway Company v. Mich. R. R. Comm., supra; Railroad Commission of California v. Southern Pacific Co., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713, both decided prior to the passage of the Transportation Act; and see the recent case of Interstate Commerce Commission v. Oregon-Washington Railroad & Nav. Co., 288 U. S. 14, 40, 53 S. Ct. 266, 77 L. Ed. ——; (4) by a consideration of the relevant provisions of the Constitution and statutes of the state of Nebraska (section 20, article 4, Con-

stitution of Nebraska; section 75-201 et seq., and section 75-712, Compiled Statutes of Ne-' braska for 1929.).

We do not wish to be misunderstood as holding that regulations or rates relative to intrastate business established by state authority may not interfere with interstate commerce to such an extent as to require exclusive control by the Interstate Commerce Commission; see Transit Commission v. United States, supra; but we think no such situation is presented by the case at bar.

### Are the Issues Presented in the Case at Bar Res Adjudicata

■ The trial court found as one of its conclusions:

"That the decision by the Supreme Court of Nebraska, in the case of Missouri Pacific Railroad Corporation, Appellant, v. Nebraska State Railway Commission, Appellee, 115 Neb. 856, 215 N. W. 138, is res judicata upon the several matters and issues presented in this case."

We think this conclusion was right.

(a) The issues presented before the Supreme Court of Nebraska were substantially identical with those presented to the trial court in the case at bar.

The broad issue presented to the Supreme Court of Nebraska is thus stated by that court, quoting from the brief of the railroad company's counsel in that case:

"The question involved in this appeal is whether or not the order of the Nebraska State Railway Commission requiring the Missouri Pacific Railroad Corporation in Nebraska to open its team tracks on what is known as the 'Belt Line' in the City of Omaha to the public should be upheld, or, in other words, whether the order of the Nebraska State Railway Commission should be sustained whereby the Missouri Pacific Railroad Corporation in Nebraska is required to switch cars that have arrived in Omaha in in the course of intrastate railroad transportation upon a railroad other than the Missouri Pacific to a team track owned by the Missouri Pacific Railroad Corporation in Nebraska, for a switching charge."

The broad issue in the case at bar is disclosed by the prayer for relief in the bill of complaint reading as follows:

"Wherefore plaintiff prays that the said Nebraska State Railway Commission and the individual defendants herein and each and all of them, and the successors in office for each and all of them, be perpetually and permanently enjoined and restrained from enforcing or attempting to enforce the order of February 23, 1923, effective April 1, 1924, cancelling the said Freight Tariff Nebraska No. 7 and from preventing or attempting to prevent the plaintiff company from denying to other railroads and shippers thereover switching service from and to its team tracks in the City of Omaha and in the Omaha terminal, and from requiring or authorizing the use by other railroads of plaintiff's team tracks in or for a reasonable distance outside of the said Omaha terminal, and plaintiff prays for such other and further relief as may be just and equitable."

While the verbiage differs in stating the issue, the vital question is the same, viz., whether the order of February 23, 1924, of the Nebraska State Railway Commission was valid or invalid.

(b) That issue was decided on the merits by the Supreme Court of Nebraska. That court, after adverting to the evidence, said (Missouri Pac. R. Corp. v. Nebraska State Railway Comm., 115 Neb. 856, 215 N. W. 138, page 140):

"Ordinarily, this court will not interfere with findings of fact of the state Railway Commission when it has jurisdiction and there is sufficient evidence before it to sustain its findings.

"Reversible error does not appear in the record. It follows that the findings and order of the state Railway Commission must be, and they are hereby, approved."

(c) The parties were substantially identical. The issue was raised and decided between the Nebraska State Railway Commission on the one side, and the Missouri Pacific Railroad Corporation in Nebraska on the other side.

■ The fact that other parties were named in the state court does not destroy the substantial identity of the parties. Thompson v. Roberts, 24 How. 233, 16 L. Ed. 648; Southern Cotton Oil Co. v. Shelton (C. C. A.) 220 F. 247.

The trial court's finding that there had been no substantial change of circumstances since the decision of the Supreme Court of Nebraska is, we think, supported by the evidence. A discussion of the evidence we deem unnecessary.

The judgment is affirmed.

VAN VALKENBURGH, Circuit Judge, concurs in the result.